HUBBARD F. DURGIN AND WIFE *v.* THE TOWN OF DANVILLE.

*Practice.  Evidence.  Highways.*

The decision of the county court as to the loss of a paper, preliminary to the admission of secondary evidence of its contents, is revisable in the supreme court when erroneous in matter of law.   But whether the court below has found facts correctly from evidence *pro* and *con* bearing upon the existence of the facts of which the rule upon that subject is predicable, it is not for the supreme court to inquire or determine.

In case for injury upon a highway, the plaintiff submitted to one personal examination by the defendant's medical witnesses during trial, but refused to submit to another, for the alleged reason that she was too feeble and exhausted.  *Held,* that, to rebut any unfavorable influence that might be drawn against her for the refusal, it was competent for her to show that sometime before the trial, when the agent of a railroad company that had been vouched in to defend, and which the town claimed was liable over to it, visited her in company with one of the selectmen of the town, she requested that the company send physicians to examine her, to ascertain how badly she was injured.

It was *held,* that under the events and circumstances that constituted and characterized the accident in question, no rigorous rule of law could be formulated by which it could be determined that a given width of travelled track, in a certain depth of snow, and bounded by banks of a given hight and slope, would constitute a highway in good and sufficient repair.

The court refused to charge that if the plaintiff had driven over the road in question once to three times a week for three weeks previous to the accident, and was acquainted with the road, and at the time of the accident was driving a horse perfectly under control, and it was light enough to see the banks of snow, and the passage through the drifts was six feet wide, and he drove on to the bank and tipped over, it was such carelessness that, as matter of law, no recovery could be had, as with ordinary care he could have driven such a horse over such a road. *Held,* no error.

How far the court will go in its charge to the jury, in developing and amplifying the doctrine of the law of the case, and indicating pertinent considerations that would bear upon the application and results of it, in view of the evidence, is generally matter of discretion, not revisable by the supreme court.

CASE for injury to the plaintiff Mrs. Durgin on a highway. Plea, the general issue, and trial by jury and verdict for the

plaintiffs, September term, 1873, Washington county, PECK, J., presiding.

It was claimed by the plaintiffs, and their evidence tended to show, that Mrs. Durgin was seriously injured, externally and internally, by being tipped over in a sleigh in going to a ball on the 19th of January, 1872, with her husband, to Danville Green. It was claimed by the defendant that if any injury was sustained by her in consequence of the insufficiency of the highway, that insufficiency was caused by the acts of the Montpelier & St. Johnsbury Railroad, or of the central portion of the Portland & Ogdensburgh Railroad, by their servants and agents ; and that said railroad had been vouched in to defend, but did not appear, and that the town of Danville alone defended the suit.

The place where the accident occurred, was at a small village called West Danville, at·the outlet of Joe's Pond, in Danville. Where the bridge crossed the outlet of said pond, it was very near the hotel at West Danville, and on the south side of the bridge three roads came together; one, up from Peacham, another from another part of Peacham, and the other from Cabot, and after they crossed the bridge, and passed by the hotel, one branch of the road turned westerly, towards Walden, and the other easterly, towards Danville Green.   Considerable travel passed across this bridge and over the road on which the accident happened, and the railroad was constructed along between the bridge and hotel and very near the bridge.   It appeared that the snow was deep that winter, and that the passenger trains began to run on said road about the first of January, 1872; that the railroad had no depot at West Danville, and that freight and passengers were taken on and off near said bridge.

The defendant introduced the testimony of one Mary Rogers, to prove that a few days before the injury complained of, Mrs. Durgin sent her two letters to come and work for her ; that in the last letter she sent her $2 to pay her expenses from Northfield to Marshfield, and that, by appointment made before the injury, the witness met Mr. Durgin at Marshfield, on the night of the 20th of January, 1872, the night after the injury.   The defendant claimed that those letters showed that Mrs. Durgin was

in a very poor state of health a few days before the accident; and as to their loss, the witness testified that she went to work at the plaintiffs' in October, and was there most of the time until Thanksgiving, when she went to her sister's in Northfield ; that she gave the letters to her sister's children to play with, and never saw them afterwards, and supposed they were torn up; that she asked for them in the time of it, and her sister said the children tore them up, and she burned them ; that she had been back to her sister since, but not to stay, and that when there the week before she testified, she inquired for the letters. The defendant thereupon offered to show the contents of said letters by parol, to which the plaintiff objected, and the court found as matter of fact that the loss of the letters was not proved, and excluded the evidence ; to which the defendant excepted.

It appeared that after Mrs. Durgin came to attend the trial, and just before it commenced, or during its progress, and before the plaintiffs had put in all their opening evidence, she submitted to a personal physical examination in reference to her injuries, by the physicians produced on the part of the defendant, and who were witnesses for the defense ; that on the trial, the defendant introduced evidence tending to prove that afterward, at a late stage of the trial, she was not willing that physicians on the part of the town should make another examination of her person ; and the evidence on her part tended to show that she was then in a very feeble condition, and much exhausted by the trial, and was having her monthly period. The plaintiffs, to rebut any unfavorable inference to be drawn from this evidence on the part of the town, offered the statement of one Bowman, which, though informally taken, was not objected to on that ground, but on the ground that the evidence, if properly taken, was inadmissible for any purpose. The statement was, that on February 8, 1872, the directors of the railroad sent the witness to the plaintiffs' house, to see them in relation to the injury and a settlement, and that he went in company with one of the defendant's selectmen ; that he saw Mrs. Durgin, but they were not ready to settle, as she did not know the extent of her injury, and she wanted the

13

railroad to send some good physician to examine her, to see for themselves how badly she was injured, and that the witness reported to the directors, and told them of her request for physicians to be sent. The court admitted the evidence for the purpose for which it was offered; to which the defendant excepted.

It also appeared that after this interview of Bowman and the selectman with the plaintiffs, the defendant sent two physicians to plaintiffs' house, to examine her as to her injury, and that they did on that occasion make an examination of her person, no physician of plaintiffs' being present. One of said physicians was the agent of the defendant to prosecute and defend suits, and both were used as witnesses on the part of the defense.

The plaintiff introduced the testimony of witnesses to show the condition of the highway in question, the manner in which the accident happened, and other material facts in the case. The defendant introduced no testimony as to the condition of the road, or as to its sufficiency or insufficiency, and no evidence on the question of the manner in which the accident happened, nor any evidence as to the want of care and prudence of either plaintiff. Both parties introduced evidence as to the extent of the injury to Mrs. Durgin; and Mrs. Durgin was herself a witness.

The defendant requested the court to charge the jury, among other things, as follows:

4th. "If the jury find that the road was from six to seven feet wide, well shoveled out, if it was six inches hollowing in the middle, through a drift or bank of snow eight feet long on one side, and fifteen to twenty feet long on the other side, the banks rising at an angle of forty-five degrees from the traveled track; it is a good and sufficient road, and is a compliance with the statute, at the place described by the testimony."

The court refused so to charge, to which refusal the defendant excepted; but the court did charge as to the sufficiency of the road.

5th. "If Mr. Durgin had driven along this road once to three times a week, for three weeks before this, and was acquainted with the road, and was driving a horse perfectly under control, and it was light enough to see the banks of snow, and the passage through the drifts was six feet wide, if he drove on to the bank

·and tipped over, it was such carelessness on his part that as matter of law, his wife cannot recover : as with common and ordinary care, he could drive a perfectly manageable horse along such a road, as above set forth."

The court refused so to charge, and charged as to the want of ordinary care and prudence of the husband in driving, as follows :

" Another question has been made by the counsel for the town, as to whether the plaintiff and her husband were in the exercise of common care and prudence ; or, in other words, whether their want of common care and prudence did not cause the accident which produced the injury which plaintiffs seek to recover for, or whether it did not contribute to it, that is, cause it in part. Well, a want of common care and prudence on the part of Mr. Durgin, although this action is in favor of his wife, and her suit, and he doesn't recover damages she may have sustained in consequence of the injury, yet, as he was driving the team, and she riding with him, a want of common care and prudence on the part of Mr. Durgin, which contributed to the accident which caused this injury, would be the same as a want of common care and prudence on the part of the plaintiff herself, that would prevent her recovering, provided that want of common care and prudence contributed to the injury, that is, contributed to the accident which caused this injury, for which she seeks to recover. This is a question for the jury to determine. You have heard the testimony in relation to the road, its formation and all the surroundings, and you have heard the testimony as to the manner in which he was driving, and I don't understand that that has been controverted by any testimony upon the other side. You have heard the testimony as to how the accident happened, and as to the tip-over. It tends to show that the horse varied a little to the right, striking the icy formation on the bank, and all the testimony in relation to it, and it is for you to determine whether Mr. Durgin was wanting in common care and prudence, and whether that want of common care and prudence contributed to this accident ; in other words, in part occasioned it. ˙ If so, then plaintiffs cannot recover."

˙ The defendant excepted to the refusal to charge according to this last request, and to the charge as stated on that point. There was no claim that Mrs. Durgin was guilty of any negligence or want of care and prudence.

*J. A. Wing* and *B. N. Davis*, for the defendant.

From the testimony of Mary Rogers we say the court erred in not admitting proof of the contents of the letters. It may be said the court were the sole judges of the amount of proof necessary to prove the loss of a paper, to admit proof of the contents. We admit there are some cases that would seem to sustain such a doctrine, but that is not the law in this state. In the following cases the county court admitted proof of the contents of papers after the court decided the loss was ·sufficiently proved, and the supreme court reversed the cases, and held the loss was not sufficiently proved to let in parol testimony. *Viles & Atkins* v. *Moulton,* 11 Vt. 470 ; *Royalton* v. *The Royalton & Woodstock Turnpike Co.* 14 Vt. 311, 323–4 ; *Thrall* v. *Todd & Tr.* 34 Vt. 97. If the decision of the county court can be reversed when the court admits secondary evidence without sufficient evidence of loss, it should when the court reject important evidence when the loss was proved. The declarations of the witness's sister were part of the *res gestæ,* competent evidence to prove the loss. But all the foregoing cases were where the action was founded on the lost instruments. Where the paper comes in incidentally, it does not require the same strictness of proof to show the execution of the paper, as it does where the action is founded on the paper. *Chandler* v. *Caswell,* 17 Vt. 580 ; *Curtiss* v. *Belknap,* 21 Vt. 433. The contents of a writing which does not constitute the ground of action, and is only collateral to the suit, and not in the custody of the parties, may be proved by parol. *Chandler* v. *Caswell, supra ; Trustees Wabash & Erie Canal Co.* v. *Runhart,* 22 Ind. 463 ; *Lubards* v. *McLeon,* 8 Ired. (N. C.) 523 ; *Plank Road Co.* v. *Bryan,* 6 Jones Law, (N. C.) 82 ; *Williams & Co.* v. *Kendall,* 67 N. C. 241 ; *Pollock* v. *Wilcox et al.* 58 N. C. 46 ̈; *Vorhees* v. *Dorr,* 2 Barb. 580, 587.

The statement of Bowman was improperly admitted as evidence. It could not be legal evidence for the plaintiffs under any aspect of the case. It was offered and admitted to prove her own declarations made to the agent of the railroad, not to the town, and was no part of the *res gestæ. Holbrook et al.* v. *Murry et al.* 20 Vt. 525. Upon what principle of law could her declarations on

February 8, 1872, be made evidence to rebut any unfavorable inference to be drawn from her refusal to be examined late in the term, after she had submitted to two examinations. It may be said that this testimony, if it was error to admit it, had no effect on the jury. We contend otherwise.

The court erred in not charging the jury as requested in the defendant's fourth request. Such a road as that implied by the request is a good and sufficient road. The question of the sufficiency of the highway is often a mixed question of law and fact. *Rice* v. *Montpelier*, 19 Vt. 470, which is an authority on this point. The court say: " But the court did charge as to the sufficiency of the road." But he does not tell us what he did say, nor whether what he did say was excepted to or not.

The court erred in not charging according to the defendant's fifth request. The charge as given was not what the case called for, and was directly calculated to mislead the jury. The suggestion that the horse *varied a little to the right* and struck the icy formation, was virtually telling them the road was insufficient; because it would be if a *little variation* to the right caused the sleigh to tip over. The court should have explained to the jury that, the town having shovelled out the road at least six feet wide, the plaintiff should have driven his horse near the west side of the cut, when there would have been ample room to pass through in safety. The court should also have explained, the snow being very deep and the drifts bad, the impossibility of keeping them in the same situation as in the summer. And also the duty of the traveller in passing through drifts, &c. For not more fully explaining to the jury the duty of the town and the traveller in mountainous towns, in deep snows, there should be a new trial granted. The court at least should have told the jury that the burthen of proof was on the plaintiff, to show that he was in the exercise of common and ordinary care and prudence. *Hanlon* v. *The City of Keokuck*, 7 Clark (Iowa), 488; *Smith* v. *The City of Lowell*, 6 Allen, 39; *Rice* v. *Montpelier, supra; Ozier & wife* v. *Hinesburgh*, 44 Vt. 220.

*J. P. Lamson*, for the plaintiffs.

The court found the fact that the loss of the letters was not proven, and this court will not revise that finding, or inquire into it. *Pomfret* v. *Barnard*, 44 Vt. 527 ; *West River Bank* v. *Gale*, 42 Vt. 27 ; *Oaks* v. *Oaks*, 27 Vt. 210 ; *Lyman* v. *Lyman*, 30 Vt. 463 ; *Wetherbee et al.* v. *Ezekiel*, 25 Vt. 47 ; *Admr. of Janes* v. *Martin & Marcy*, 7 Vt. 92.

The case showed that Bowman's testimony was offered and received for a limited purpose. The plaintiff insists that it was properly admitted, to rebut any unfavorable inference to be drawn from the fact that Mrs. Durgin at one time refused an examination. *Pollard* v. *Bates*, 45 Vt. 506 ; *Shattuck* v. *Hammond*, 46 Vt. 466.

The defendants requested the court to hold that this road as described by the witnesses was a compliance with the statute. There is no exception to the charge of the court on this subject. Their exception is because the court would not hold as matter of law that the road was a good and sufficient one.

In order to allow the court to hold as matter of law that the road was good and sufficient, and take the question from the jury, the evidence must be of such a character that it had no legal tendency to sustain any other inference.

The description of this road as given by witnesses clearly shows it out of repair and defective ; the gist of all the evidence is, if the horse had turned one foot, the sleigh would be upset. *Clark* v. *Boardman*, 42 Vt. 667 ; *Willard* v. *Newbury*, 22 Vt. 458 ; *Barton & wife* v. *Montpelier*, 30 Vt. 650 ; *Sessions* v. *Newport*, 23 Vt. 9.

There can be no error in the court's refusing to comply with the fifth request, or in the charge as given on that subject. The question whether the plaintiff's negligence contributed to the injury, is one of fact for the jury. The only exception to this rule is in cases where the inference to be drawn from circumstances, upon a question of this character, is so plain and clear as not to admit of any discussion or rational doubt. A strong case is not sufficient. The evidence must have no legal tendency to sustain any other inference. There can be no reason for bringing this

case within this exception. *Hill, admr.* v. *New Haven,* 37 Vt. 501 ; *Briggs* v. *Taylor,* 28 Vt. 190.

The opinion of the court was delivered by

BARRETT, J.   Some features of the argument that has been addressed to us in this and in another cause that has been heard at this term, indicate that to some extent the idea is abroad that the decision of the county court as to the loss of a paper, preliminary to the use of secondary evidence of its contents, is not revisable in this court.   Such idea is not correct ; for such decision is revisable, and is reversible, also, when it is erroneous in matter of law. The rules of law as to proof of loss are well defined in the books, and their application is illustrated in a great variety of cases.

In *Thrall* v. *Todd,* 34 Vt. 100, for instance, one rule is stated and applied, resulting in the reversal of the judgment.   The rule stated is : " Before parol evidence of its contents is admitted, it should be shown that a search for it had been made in good faith and with proper diligence, in the place where it was likely to be found, and that such search proved ineffectual ; " and the cases and books are cited in which such rule is established.   It is always a question of law in the given case, whether the rule has been acted on and properly carried into effect, and of course it is revisable on exceptions.

That case shows in what respect the rule had not been carried into effect.   " No proof had been offered to show that search had been made for the order or assignment, either among the papers of the treasurer or of the attorneys."   The rule required that such search should have been made.   In *Vilas et al.* v. *Moulton,* 11 Vt. 474, " there was no examination of the papers of Judge COLLAMER, who had been counsel in the case, or of Blake, among whose papers we should expect the note would have been kept." The rule required this to be done.   The remarks of Ch. J. WILLIAMS, in *Royalton* v. *Turnpike Co.* 14 Vt., are in the same view and to the same effect.   If, under that rule, evidence had been given tending to show that search had been made in the places required by that rule, the finding of the court on that evidence would not be the subject of exception and revision in this court.

In the case in hand, the court acted upon the recognized rule of law, and so did the counsel, and gave evidence as to the place and kind of inquiry, and extent of the search.' On this evidence it was for the court to find the fact of loss. The court failed to find that fact, or rather did find, affirmatively, " the fact that the loss isn't proved." The rule is not, that if evidence is given *tending* to show such loss, secondary evidence may be admitted ; but it is, that if the loss is *proved,* such evidence may be given. The rule and its application are well shown in *Voorhees* v. *Dorr,* 2 Barb. 587. JOHNSON, J., says : " There was no error in allowing parol evidence to be given of the letter. The witness stated that it was lost, and he could not tell what had become of it. He was not cross-examined for the purpose of ascertaining where he kept his letters, or whether he preserved them at all, or what search he had made ; but the objection was, that there was no evidence that it had been destroyed, or that the witness had searched for it where he usually kept his letters. The witness stated generally that it was lost, which was sufficient evidence, *prima facie,* of loss. A further examination might have disclosed an insufficient search for the letter in the place where such things were usually kept by the witness, but the defendant did not see fit to make the inquiry."

Also, in *Plank Road Co.* v. *Bryan,* VI. Jones. Law (N. C.), 84, where the proxies were clearly proved to have been thrown away as waste paper, it is said : " Those instruments must therefore be considered as having been destroyed, and it was idle to require proof that they had been searched for," &c. In that case there was no place of custody of such papers, and so no place to be searched, as being the one where such papers were likely to be kept or found. The cases all recognize the rules of law, and distinguish between them and the discretionary action of the court under them.

As has been often remarked, to a considerable extent each case must stand on its own circumstances as to whether the rules of law governing the subject have been acted on correctly ; but whether the court below have found facts correctly from the evidence bearing *pro* and *con* upon the existence of the facts of which

the rule is predicable, it is not the province of this court to enquire or determine. The exception taken in this respect is not maintained. Where the contents of the paper constitute the effective evidence pertinent to the issue on trial, the rules of law as to proof of loss, before giving secondary evidence of such contents, apply to and govern the subject. 22 Ind. 465, PERKINS, J. : " It is a general rule that the best existing evidence of a fact must by produced to prove it ; and where the matter to be proved is the contents of a record, or the terms of a written contract, and they are in existence, the record and contract are the best evidence. In this case it was not the contents of a record or contract of which proof was given," &c. In 68 N. C. 49, RODMAN, J., says : " If the question (even between strangers) be as to the contents of a writing, it must be proved by the production of the writing itself, if within the power of the party." If it has been lost or destroyed, then the contents may be proved by secondary evidence. The authorities are all to the same effect.

We think no error was committed in admitting the evidence of Bowman, for the sole purpose stated. The defence were making a point against the plaintiffs as to the extent of the injury to the wife, as affecting the extent of the damages proper to be recovered, on the score of a recent refusal of the wife to submit to a further examination of her person by doctors ; and it was by way of arguing that the reason of such refusal was a fear on her part that such examination would show her real injury to be less than she was pretending and claiming. The evidence by Bowman was offered to just that point, viz., to countervail the effect of such an argument against her, as it obviously would have a tendency to do, if it should be found that, in fact, at any time after the injury, and the bringing of the suit, she was inviting examination to be made by some good physicians to be sent by the railroad company, whom the defendant had vouched in to defend the suit, and that, too, in connection with a negotiation for settlement of the claim between the plaintiff and the agents of the parties interested to defend against and reduce the claim. The propriety of this evidence could not be made plainer by discussion. It is clear

upon principle and the reason of the thing, and fully approved by the analogy of decided cases.

As to the fourth request. If the facts embraced in that request had constituted all the elements of which the law would take cognizance, as affecting the sufficiency of the highway at that point, it might with better show of reason be claimed that the court should have undertaken to determine as matter of law the sufficiency of the highway. But to all persons familiar with Vermont winters, it is plain that several other items would, as a practical matter, be for consideration in determining the question of sufficiency; and some of such items are presented by the evidence detailed in the cause. It is clear that no rigorous rule of law can be formulated by which it can be determined that a given width of travelled track in a certain depth of snow, and bounded by banks of a given height and slope, constitutes a highway in good and sufficient repair, under the events and circumstances that constituted and characterized the accident in question. The best that can be done by the court, as the mouthpiece of the law, is, to express to the jury, as appreciably as may be, the sense and meaning of the law as applicable to the subject, and leave it to the jury to say on the evidence whether the condition of the road realizes and fulfils that sense and meaning of the law. This is the net result of all the cases, and no more specific reference is called for.

The exception is only to the refusal of the court to charge as requested. The case does not show that such refusal was error. The court did charge the jury on the subject of said request, but the charge is not detailed. No exception was taken to that. It is therefore presumable that it was answerable to the well-known rules and usages in such cases, in serving up for the consideration of the jury such questions, mixed of law and fact.

As to the fifth request. *Mutatis mutandis*, the remarks just made apply to this request; so there was no error in the refusal to comply with it. Exception is taken to the charge upon the subject of that request, as given in the copy before us. It is not claimed that what the court said to the jury was not true, both as to the law and the facts. The principal claim and complaint is, that he did not say more. What the court said, embraces the ultimate

doctrine of the law of the subject, very comprehensively stated. It is difficult to say that the court committed revisable error in not developing and amplifying that doctrine, and indicating, at least, pertinent considerations that would bear upon its application and the results of it, in view of the evidence in the cause. How far the court will go in that respect, and with what light reflected upon the merits in controversy, is generally a matter of discretion, influenced or controlled by various considerations. Someti es it depends on the faculty and facility of the judge; sometimes on the views he entertains of the merits of the case ; sometimes on the manner in which the case has been presented in the trial and argument and requests; sometimes on the supposed intelligence, character, and disposition of the jury. However it may seem to us that the presiding judge might properly, and even ought to have, said more, and in some respects differently, in order more assuredly to secure in the end justice, both legal and impartial, it is not for us to impute legal error, upon the mere conjecture that his mode of putting the case would have been better if differently done, unless it appears that the jury have been misled by the manner in which he did put it.

I, and no doubt my associates, have often taken great pains to make the law of cases intelligible and appreciable by juries, and have found in the result that we have not succeeded to any flattering extent. This may not be attributable to fault of either judge or jury. Of course most of the principles and rules of the law that are involved and have to be specifically applied in the trial and decision of cases, are of novel impression with most jurymen, and not so readily apprehended and appreciated by them as by judges and lawyers who give their minds studiously to the subject. What seems to the professional man very simple and easy to understand and apply, may be very dark and complicated and difficult of application to the juryman, whose attention is first called to the subject in the trial of the pending cause. It is not strange that often the most painstaking development and explanation of the law of the case to the jury, sometimes, or often, fails to be so adequately comprehended and understood as to insure

the most desirable and adequate results in the use and application in the particular case.

I have often queried whether on the whole it would not be quite as likely to serve the ends of legal justice, to state comprehensively the naked propositions of the law applicable to and controlling the points of fact upon which they were to pass on the evidence, as to go into a sort of elementary teaching of the jury in the law, its reasons, applications, and results. I have reason to suppose that juries are quite as often misled by impressions made by the judge in his efforts to make everything ·plain by elaborate exposition and discussion, as in his comprehensive charges, stating only the propositions applicable to the points, without exposition or discussion. As said before, short of legal error, the manner and matter of a charge to the jury is so much within the discretion of the judge, as not to be cause for reversal of judgment, however it may seem to counsel to be the subject of speculative and conjectural or even *æsthetic* criticism.

It would seem that the fifth request did not involve, or direct the attention of the court to, the subject of burden of proof on the question of contributory negligence; nor was the attention of the court called to any omission in this respect in the charge as given. It is presumable that proper instructions were given in the course of the charge, as to what was needful to be proved by the plaintiffs in order to make out a case entitling a recovery; and this would be one of the subjects of proof by them, to such an extent that the jury should be able on the whole evidence to find that negligence of plaintiffs did not contribute to the happening of the accident. It is sufficient to say that the exceptions do not show that the court omitted to give proper instructions on that subject.

Judgment is affirmed.