# WHITNEY WAGON WORKS v. SAMUEL L. MOORE.

## Evidence.    False Representations.    Copy of Letter.

1.  Plaintiff claimed that defendant obtained possession of property sued for under color of purchase by false representations and without intending to pay for it.  Sale was made by agent of plaintiff, March 10th, subject to its approval, and was approved April 12th.  The alleged false representation by defendant was that he owned his stable and stock.  March 25th, defendant wrote plaintiff a letter containing this clause:  "I have got a little stable and got it most paid for."  Plaintiff and defendant were then corresponding with reference to other matters, and defendant claimed that this language was used with reference to such matters.  *Held*, that the clause might go to the jury, leaving them to determine in what connection it was used.

2.  When clause was offered, defendant did not elect to have the whole letter read on his attention being called to it.  *Held*, that he could not object to its admission on that ground after the testimony was closed.

3.  Plaintiff was allowed to show that at time of sale defendant's stable and stock were mortgaged to its full value, and that he was insolvent, and that upon the receipt of this property he immediately mortgaged it to secure, among others, a fictitious debt.

4.  Defendant claimed that he had been ready to pay this debt when he could obtain a certain discount as to freight.  *Held*, that the defendant might be asked if the plaintiff's attorney had not proposed to allow this discount in full.

5.  Agent of plaintiff was allowed to testify in rebuttal that he would not have sold the property to defendant if defendant had given him such information relative to his financial condition as he had testified on trial that he did give.

6.  To prove the contents of a certain letter, plaintiff offered letter-press copy.  There was no direct evidence that such a letter was ever written or mailed to defendant.  It did appear that plaintiff kept copies of all letters sent out in the course of business in a book where this one appeared in regular order.  It was dated March 23d, and would reach the defendant March 25th.  On that date defendant wrote plaintiff, acknowledging the receipt of its letter that morning.  Plaintiff had written the defendant no other letter about that time.  *Held*, admissible.

Trover for two buggy wagons.  Plea, not guilty.  Trial by jury at the December Term of the Caledonia County Court, 1887, Taft, J., presiding.  Verdict for the plaintiff.  Exceptions by the defendant.

The plaintiff claimed that the defendant had obtained possession of the wagons through fraudulent representations as to his financial ability. The sale was effected through the plaintiff's agent, Phillips, who took the written order of the defendant subject to the subsequent approval of the plaintiff. The evidence of the plaintiff tended to show that at the time of making the contract the defendant represented to Phillips that he owned his stable and stock substantially, and that Phillips so reported to the plaintiff, and that it relied thereon in approving the contract and delivering the wagons.

The contract with the defendant was made March 10.

It was approved and the goods shipped April 12.

Pending the consideration of the order by the plaintiff, and on March 25, the defendant wrote the plaintiff a letter which contained this clause, " I have got a little stable, and got it most paid for." The parties had corresponded with refence to other matters, and the defendant objected to the introduction of this letter or clause on the ground that it referred to those other transactions. The court admitted this clause and left it to the jury to say whether it referred to the matter in suit.

The plaintiff was also permitted to show, against the defendant's exception, that, at the time of the sale by Phillips and the making of the alleged representations by the defendant, the defendant was hopelessly insolvent, that his entire property was then covered by mortgages, one of which secured a fictitious debt to one Atwood for $850, that upon the receipt of the wagons he at once re-mortgaged his property, including those wagons, to secure, among other claims, the aforesaid note of $850, and another fraudulent note of $250.

The defendant claimed that he had always been ready to pay for the buggies, when the plaintiff would allow a claim which he made about freight. Against the defendant's exception the plaintiff's counsel was permitted to ask him this question :

" Did I not tell you that you might take out your freights as you claimed them to be, reckoning interest on the balance, the

freight on goods not to be included but just pay that debt and interest and close the matter up?"

Answer. Yes, sir.

The other exceptions sufficiently appear in the opinion.

*Bates & May,* for the defendant.

1. As to the letter of March 25, the whole letter should have gone to the jury. This was the readiest way in which the jury could determine what it referred to. As it was left, the court virtually held that the clause admitted referred to the matter in dispute, and the effect of this holding could not be done away with by the charge. *Dennis* v. *Barber et al.,* 6 Sarg. and R., 427; *Boon* v. *Danville,* 53 Vt. 183.

2. The letter press copy was improperly admitted. *Delaney* v. *Erickson,* 10 Neb. 492; *Smith* v. *Easton,* 54 Md. 138; *Dennis* v. *Barber,* 6 Sarg. & R. (Pa.) 420–5–6; *Lewis* v. *Harris,* 40 Conn. 361; 1 Phillips Ev. 413, *ante* 121, Camp's and Hill's notes; *State* v. *Hopkins,* 56 Vt.; *State* v. *Horn,* 43 Vt. 20; *Robertson* v. *Lynch,* 18 Johns, (N. Y.) 451–7; *Smith et als.* v. *Carrington et als.,* 4 Cranch, (U. S.) 61; 4 McLean, 378; *Foster* v. *Leeper et al.,* 29 Ga. 294; *McCully* v. *Barr,* 17 Sarg. & R. (Pa.) 445.

Evidence of prior or subsequent mortgages on the property of the defendant should not have been admitted. It had no tendency to support any issue made by the plaintiff. *Morris* v. *Talcott,* 96 N. Y. 100; *Artman* v. *Bell,* 9 Phil., (Penn.) 237; *Hard* v. *Brown,* 18 Vt. 87; *Richardson* v. *Hitchcock,* 28 Vt. 757; *Rowley* v. *Bigelow,* 12 Pick. 307; *Edwards* v. *Warner,* 35 Conn. 517; *Fisher* v. *Brown,* 1 Tyler 387.

4. It was error to allow the plaintiff's counsel to inquire of the defendant in regard to an interview between them as to a compromise. It has been uniformly held that offers of compromise are not admissible. *Bennett* v. *Beam,* 42 Mich. 346; *Doon* v. *Ravey,* 49 Vt. 293; *Knowles* v. *Crampton,* 11 At. Rep. 593; Stephen's Dig. of Ev., 72 and notes; *Clapp* v. *Foster,* 34 Vt. 580; *Daniels* v. *Woonsocket,* 11 R. I. 4; *Strong* v.

*Stewart,* 9 Heisk, (Tenn.) 137 ; 1st Green. on Ev., s. 192 ; *Jewett* v. *Frink,* 42 Wis. 446.

5.   The plaintiff had no right to ask Phillips what he would have done under certain specified circumstances.   *Palmer* v. *Pinkham,* 33 Me., 32 ; 39 Me. 428; 32 Me. 521; 18 Barb. 337; 39 Mo. 468; 52 Vt. 353.

*Ide & Stafford,* for the plaintiff.

1.   As to the letter of March 25th, the defendant might have had the whole letter before the jury, and would have had, had he not himself objected to it.

2.   It was permissible to show that the property of the defendant was encumbered when he made the contract, for the purpose of showing that his statements were false; and that he afterwards encumbered it together with those same wagons, to show that he never intended to pay for them.   49 Vt. 355; 58 Vt. 315.

3.   The letter press copy was properly admitted.   The evidence in relation to it tended to establish these three things.

1.   That a letter, of which this was a copy, was actually written by the plaintiff.

2.   That the letter was sent to the defendant.

3.   That it was received by the defendant.

The opinion of the court was delivered by

VEAZEY, J.   1.   As to the letter of March 25th, the clause referring to the defendant's ownership of the stable was admissible in connection with the other evidence tending to show it referred to the trade in question.   Under the contention of the defendant that it referred to the consignment trade his rights were guarded with peculiar exactness in the instructions to the jury.

The next exception of the defendant, after the charge to the jury, on the ground that the whole letter was not admitted, came too late.

The plaintiff offered the whole letter but only for the purpose of showing said clause and the court told defendant's

counsel that it might be read in full if they so desired, but they objected to any and all parts. It was therefore their fault that they did not get it all.

The claim that the court, in its first ruling, decided as matter of law that the clause admitted referred to the trade in question, is not borne out by a fair construction of the exceptions. They do not even show that he expressed such opinion to the jury. They only show that being of such opinion he admitted the clause, and then left it to the jury, upon the other evidence, to say whether it did refer to the trade in dispute or to the other trade talked about.

2. One important phase of the plaintiff's claim was that the representations of the defendant as to his ownership of the livery stable and contents were false. The plaintiff's evidence tended to show, in substance, that the defendant said that this property was his and was the measure of his means. This made it proper for the plaintiff to show what mortgages then rested upon that property, and that he was owing debts to such an amount that he was then insolvent and had not the means as he represented. So there was no error in the admission of that class of mortgages and the showing of his then debt.

The defendant's counsel lay more stress on the admission of the mortgages that the defendant subsequently put on this property and the wagons he received from the plaintiff. One was put on as soon as the wagons were received, and three others followed within a month. The plaintiff's evidence tended to show, in this connection, that some of the debts which it was specified in the mortgages that they were given to secure, were fictitious. These mortgages were admitted, with the other evidence showing the circumstances under which they were given, as tending to show that the purchase of the wagons was made with the intent not to pay for them and to keep the property, including the wagons in dispute, from attachment. They were not admitted as tending to show an intent, formed subsequent to the trade, not to pay for the wagons, or as being similar acts of fraud as here complained of and occurring about the same time, as in *Eastman* v. *Premo*, 49 Vt. 355.

They were the acts of the defendant loading with further encumbrances the same property which, under his false representations, had been the inducement for the credit, and also encumbering the wagons bought, to secure, at least in part, on the theory of the plaintiff's evidence, a fictitious debt, and this as soon as the wagons were received. Can it be said that their subsequent acts throw no possible light on the question as to whether the defendant intended to pay for the wagons when he traded for them? Suppose he had returned them upon finding, on their reception, that he could not pay for them, would not that act be admissible to negate the charge that he did not intend to pay for them? We think there was no error on this point, or as to the admission of the evidence in respect of issuing the duplicate note of $500.00 to Atwood.

3. It is urged that the question put to the defendant about taking out the freights was improper on the ground that it violated the rule which excludes conversation relating to a compromise.

The case does not show that there was ever any dispute about the debt. On the trial the defendant, evidently to meet the plaintiff's claim that the defendant did not intend to pay for the wagons when he bought them, claimed that he had always been ready to pay for them when he could get a claim allowed that he made about the freight. Under this claim the plaintiff was allowed to ask the question, and in reply the defendant admitted that the plaintiff had offered to allow him the very thing which he was claiming had stood in the way of his payment. The defendant laid the foundation for the question by a false claim in his own evidence relating to the very matter which is now urged could not be touched, because it was about a compromise. We think there is no more force in the argument than there was truth in the defendant's claim, by his own admission.

4. Against the defendant's exception, the plaintiff's witness, Phillips, who was the plaintiff's agent in the sale of the wagons, was allowed to state that he should not have sold to the defendant

--or given him credit if he had received from the defendant the information relating to the defendant's financial condition which -defendant testified he gave him.

Defendant's counsel claim this was error on the ground that it violates the rule that a witness will not be permitted to testify what course of action he would have pursued if certain specified acts had not occurred.

Assuming that this is a sound rule of evidence, we still think the testimony was admissible for another purpose in the connection in which it was offered.

The plaintiff in the opening had introduced evidence tending to show what the defendant said about his property and that the plaintiff relied upon it as true, not knowing to the contrary, and that it was false.

The defendant's evidence tended to meet all the points by a denial of making such representations and stating what he did say.

If what he claimed to have said was true then the plaintiff could not have relied upon representations, which Phillips had testified to.

In this posture Phillips was recalled in rebuttal and denied that the defendant had stated as he testified, and was then asked the question which called out the evidence to which the exception was taken.

We think the testimony became admissible for the purpose of explaining the denial and the fact that Phillips relied upon the representations he claimed then. If not strictly rebuttal for the latter purpose, no objection was suggested on that score.

5. The court received in evidence, subject to the defendant's objection and exception, a certain purported copy of a letter dated March 23d, addressed to the defendant and signed by the plaintiff. This copy contained a clause bearing materially on an issue in the case. The question is whether this copy was properly admitted in evidence.

This copy is called in the exceptions a type-written copy, but the evidence is referred to from which it plainly appears that it

is a letter-press copy of a typed letter. The plaintiff gave the defendant notice to produce the original letter with all other letters from the plaintiff.

The defendant produced the other letters but not this one and testified that he never received it. The plaintiff company proved by this agent, Phillips, that in the regular course of business, copies of all letters sent out are preserved by the company in a press letter book, bound and paged, from which he removed the leaf, page 242, containing the alleged copy, the place in the book corresponding with the dates in the regular order.

The witness testified that he did not write the letter or see it written or sent; that it was the only letter in the book addressed to the defendant near the date of March 23d; that in the ordinary course of the mail it would reach St. Johnsbury, where the defendant lived, on March 25th, from Syracuse, N. Y., where plaintiff's office was. The defendant wrote a letter to the plaintiff under date of March 25th, one clause of which was this: "Your letter came to hand this morning and will say in reply," etc. It does not appear whether the person who typed the original letter, or mailed it, or made the letter-press copy of it is dead or alive or why he was not produced, and no one testified in terms that the offered copy was a true copy of a letter sent to the defendant. The plaintiff offered the letter-press copy, counsel saying it was the best evidence they had. It is upon these facts that the contention rests as to the admissibility of said copy. The copy being secondary evidence, the question is whether foundation is laid for its admission.

The copy, being an impression taken in a letter-press, must have been a true copy, but to be admissible it was necessary to show that the original, as thus copied, was mailed to the defendant, or received by him. *Davis* v. *Mason*, 4 Pick. 156. Either fact might be proved by the positive evidence of a person cognizant thereof, or by circumstantial evidence. These two kinds of evidence do not differ in degree though they may in weight. The rule excluding evidence of a particular character, because better evidence of the facts exists, means higher evidence in

·degree, and not stronger evidence of the same degree. *Furber v. Hilliard*, 2 N. H. 480. In requiring production of the best ·evidence of which the case, in respect to a particular fact, is sus-·ceptible, it is meant that no evidence shall be received which is merely substitutionary in its nature, so long as the original evi-·dence can be had, as illustrated in the case of a written instru-ment. But when there is no substitution of evidence, but only :the selection of weaker, instead of stronger proof, or an omis-·sion to supply all the proof capable of being produced, the rule –is not infringed. Green. Ev., s. 82. The evidence tending to show that the original letter was duly sent and received was not ·secondary in degree. The only secondary evidence was the copy, ·which was properly received, if the foundation for such evidence was laid. Ordinarily the testimony of the person duly mailing the letter would be the strongest evidence that it was sent, but ·as above shown, that would not exclude other weaker evidence tending to show the same fact. The distinction between primary and secondary evidence is one of law, not of fact; referring only to the quality, and not to the strength of the proof. Green. Ev., ·s. 84. Failure to produce the strongest evidence of the same ·degree, not shown to be unattainable, raises a presumption ·against the party, but not conclusive. The fact which the plain-tiff was seeking to establish was not the loss of the original let-·ter, but that the defendant received it, and knew its contents.

That being established, and the original not being produced on ·notice, the copy was admissible to show the contents. In *Dana v. Kemble*, 19 Pick. 112, it was decided that where it was the ·usage of a hotel to deposit all letters left at the bar, in an urn kept for that purpose, whence they were sent almost every fif-teen minutes throughout the day, to the rooms of the different ·guests to whom they were directed, it will be presumed that a letter addressed to one of the guests, and left at the bar, was received by him. *Hetherington v. Kemp*, 4 Camp. 192, was an ·action on a bill of exchange, and the only question was, whether the defendant had received notice of its dishonor. Evidence was given by the plaintiff that he wrote a letter at the time,

addressed to the defendant, and put it on a table where letters were usually placed which were to go to the post office. This was held not to be sufficient evidence that the letter was forwarded ; but if it had been proved that all letters so placed were usually carried to the post office, it might have done. But afterwards a letter of the defendant being put in acknowledging the receipt of a letter of the plaintiff of the same date, though without referring to its contents, Lord Ellenborough said he would presume this was the letter written to inform the defendant of the dishonor of the bill. Where a letter was put in a box in an attorney's office, and the course of business was that a bill-man of the post office invariably called to take the letters from the box ; this was held sufficient to presume that it reached its destination. *Shelbick* v. *Garbett,* 7 Ad. & El. N. S. 846. In *Oregon Steamship Co.* v. *Otis,* 100 N. Y. 446, the witness swore that he sent the three letters written by him to Otis. The court held that in the absence of any proof to the contrary, or any inquiry as to the mode, this must be understood to mean that the letters were mailed in the usual manner. So we think that the testimony of Phillips that it was the custom of the firm to keep a press copy of all letters sent, taken with his other testimony as to finding the copy in the letter book, was legal evidence tending to show the original letter was duly mailed to the defendant. If mailed the presumption arises, from the known course of the post office department of the public service, that the person to whom it was addressed, if living at the place and usually receiving letters there, received it in the ordinary course of the mail. It is not a conclusive presumption of law, but a mere inference of fact, founded on the probability that the officers of the government will do their duty, and the usual course of business ; and, when opposed by evidence that the letter was never received, must be weighed, with all the other circumstances of the case, in determining the question whether the letter was actually received or not. *Huntley* v. *Whittier,* 105 Mass. 391. Green. Ev., n. 40.

In addition to this was the evidence tending to show that a letter written and mailed on the 23d, would in ordinary course

reach St. Johnsbury on the 25th, and the letter of the defend-
ant dated the 25th, acknowledging the receipt of a letter from
the plaintiff that morning, and evidence tending to show no
other letter was sent by the plaintiff to which this reply would
apply. We think the evidence admitted was legal and tended to
show that the letter press copy was a true copy of an original letter
sent to and received by the defendant. Plaintiff's counsel insist that
it was for the court to decide as a preliminary question whether
the copy should be admitted, and therefore not revisable if the
evidence tending to show foundation for the admission was legal,
as in case of the genuineness of a standard for comparing a dis-
puted signature. *Rowell* v. *Fuller*, 59 Vt. 688.

We are not called upon to decide that point because the de-
fendant, who is the excepting party, does not claim that the
court erred by submitting the question to the jury, if the evi-
dence was admissible. We understand it was admitted, and
presumably in correct manner, nothing appearing to the con-
trary. There is some ground for claiming a distinction on this
point between the case at bar and those cited by the plaintiff,.
viz.: *Moore* v. *Beattie*, 33 Vt. 219, and *Durgin* v. *Danville*,
47 Vt. 95, where it was held that the decision of the trial court
that the proof of the *loss*, if by legal evidence, was sufficient,
was not open to revision in the Supreme Court. And in *Dana·*
v. *Kemble, supra*, Shaw, Ch. J., says: " Whether secondary
evidence shall be admitted, where proof is offered to show an
original document in *the hands of the adverse party*, and which
he does not produce on notice, is, in the first instance, a ques-
tion for the court, to determine whether the evidence shall go to
the jury; but when admitted, the jury are ultimately to pass
upon its credit." We, however, leave the point undecided for
the reason stated.

*Judgment affirmed.*