CECELIA DE NOTTBECK *v.* RENA B. CHAPMAN.

May Term, 1919.

Present:   WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 7, 1919.

*Motion for Directed Verdict Must Point Out Ground—Evidence —Harmless Error—Withdrawing Issue from Jury—G. L. 1891, 1892—Party Testifying As to Transactions. With Decedent—Impeaching Own Witness—Instructions—Substantial Compliance—Shortage in Charge Not Reached by Exception to Failure to Charge.*

It was not error for the court to overrule plaintiff's motion for a verdict which failed to point out the precise ground on which it was based.

The admission of evidence on a certain issue, if error, was rendered harmless by the court wholly withdrawing that issue from the consideration of the jury.

In an action of ejectment against defendant personally and as administratrix of her mother's estate, where plaintiff called defendant as a witness and examined her about the contract between her mother and plaintiff under which defendant, her mother, and sister moved onto plaintiff's premises, defendant was not a witness produced against the plaintiff whose testimony could be contradicted by plaintiff's testimony under G. L. 1891, 1892, permitting a surviving party to a contract "in issue and on trial" to testify in his own favor "to meet or explain the testimony of living witnesses produced against him."

Although a party may not directly discredit his own witness, yet he
    may show by competent evidence that a material fact is otherwise
    than as the witness testified.
If the contract in question was made by the plaintiff with the de-
    fendant, her mother, and sister, the mother's death did not affect
    the plaintiff's competency to testify in her own behalf as to its
    terms.
A charge which substantially complies with a request is free from
    error although it might have been less involved and plainer.
Where the court attempts to charge upon a particular matter, a defect
    or shortage therein cannot be reached by an exception pointing to
    an omission to charge on the subject.


ACTION OF EJECTMENT. Plea, the general issue. Trial by
jury at the December Term, 1918, Bennington County, *Fish*, J.,
presiding. Verdict and judgment for the defendant. The plain-
tiff excepted. The opinion states the case.

*Wm. B. Sheldon* and *Chas. H. Darling* for the plaintiff.

*Holden & Healy* for the defendant.

WATSON, C. J. This action of common-law ejectment is to
recover the possession of real estate situated in Dorset, known
as the Hodge place. It is brought against the defendant per-
sonally and as administratrix of the estate of her mother, Eliza-
beth Chapman, deceased.

At the close of the evidence, plaintiff moved that a verdict
be directed in her favor; but the motion failed to point out the
precise ground on which it was based, and so the overruling of it
was not error. No authorities need be cited.

Error is claimed to have been committed by the court in
admitting evidence on the question of repairs made on the build-
ings by defendant's mother, a question which defendant under-
took to raise in defence of the action. But this issue was, by the
court, wholly withdrawn from the consideration of the jury.
So if the evidence were erroneously received, the plaintiff was
not harmed by it. *Armstrong* v. *Noble*, 55 Vt. 428.

The defendant was the first witness called by the plaintiff
to testify in her opening case. She testified in chief to living
at home with her mother on the place in question, owned by the

plaintiff, as long as the mother lived, and thereafter continuing to live there; that the plaintiff made an arrangement with the mother to come down to that place to rear and take care of poultry for her; that the mother moved there in June, 1902, under an agreement whereby the plaintiff was to have three-fourths of the eggs produced and one-half of the chickens raised, and the mother, one-fourth of the eggs and one-half of the chickens, the plaintiff to furnish the feed; that the understanding was that the mother was to live in the house on the place and take care of the fowls; that this continued until July, 1917, when the mother died, after which the defendant continued caring for the poultry, and furnishing eggs and chickens to the plaintiff, the same as before; that the plaintiff took all her hens and chickens away from the place in November, 1918, having none there later. In cross-examination the witness said that when they moved onto plaintiff's place in 1902, the family consisted of the mother and her two daughters, defendant and her sister, now Mrs. Dillingham; that the arrangement by which the mother was to go there to live was made by the plaintiff on the one side, and by the mother and her two daughters on the other side; that the agreement was that "we were to go there to take care of these fowls for her (plaintiff) for our rent, in payment for the rent of the premises," and in addition to the rent, have part of the eggs and chickens, as before stated, the plaintiff to furnish the feed, and that this arrangement was for the term of one year.

The plaintiff's deposition, being later offered in her own behalf, question 14 and all other questions dealing with the contract between the plaintiff and Mrs. Chapman, were objected to on the ground that one party to the contract being dead the survivor was incompetent to testify. By question 14 deponent was asked whether she made an arrangement with Mrs. Chapman, in her lifetime, whereby the latter was to enter and occupy the premises in question. The answer was that she did, either by herself or by (her agent) Miss Edwards. By question 24, whether the arrangement was made with Mrs. Chapman alone, or with her and her two daughters. The answer was that it was with Mrs. Chapman only, never with any one else. This testimony was offered by the plaintiff for the purpose of contradicting the defendant on that point, its admissibility being claimed under the clause of the statute (G. L. 1891, 1892), permitting a surviving party to a contract "in issue and on trial" to testify

in his own favor "to meet or explain the testimony of living witnesses produced against him." Under this offer and claim, the exclusion was not error. The defendant was not a witness produced *against* the plaintiff. She was a witness produced *by* the plaintiff, and was examined in chief concerning the contract and its provisions. On being cross-examined by her own counsel, the witness testified more fully in detail relating thereto, including the parties between whom the contract was made—all strictly and well within proper cross-examination. The clause of the statute invoked did not apply. And we need not consider whether the offer fell within the principle of the general rule, that a party must not be allowed directly to discredit his own witness; for the plaintiff, as she properly might without infringing upon this general rule, even though it collaterally had the effect to discredit the witness, later introduced competent evidence tending to show that the agreement in question was for no specific term, and was made by the plaintiff (through her agent) with Mrs. Chapman alone, her daughters being in no legal sense parties to it; that by the agreement Mrs. Chapman was to occupy the Hodge place, not as tenant of the plaintiff, but in connection with the services she was to render there in rearing and taking care of poultry for plaintiff. This evidence was of vital importance, for if such in effect was the agreement under which Mrs. Chapman entered into the occupancy of the place, the notice to quit, given to defendant, was sufficient; but if the relation of landlord and tenant was created by the agreement, then the notice was insufficient in length of time to answer the requirements of the law, and this action cannot be maintained.

As the evidence stood, not including testimony given by the plaintiff, it was for the jury to say who the real parties to the contract were. If the contract was made with Mrs. Chapman alone, as the party on one side, the surviving party was not competent to testify, it not appearing that she came within the special exceptions mentioned in the disqualifying statute. But if the party to that side of the contract consisted of Mrs. Chapman and her two daughters, then neither party to the contract "in issue and on trial" was dead, within the meaning of the statute, and the death of Mrs. Chapman did not affect the competency of the plaintiff. *Read* v. *Sturtevant,* 40 Vt. 521; *Paddock* v. *Potter,* 67 Vt. 360, 31 Atl. 784; *Pope* v. *Hogan,* 92 Vt. 250, 102 Atl. 937. It follows that the offer of the plaintiff to

testify in her own behalf, since the other party to the contract as testified to by the defendant, was not dead, should have been favorably entertained, and the ruling to the contrary constitutes reversible error. Whether the plaintiff's testimony, had it been received under this offer, was proper to be considered by the jury in reaching a verdict, depended on how they should find the contract to be as to parties, under proper instructions from the court.

The plaintiff excepted to the failure of the court to comply with her third request. Defendant says the charge given shows a substantial compliance, and so it does to an extent not warranting a reversal based on a shortage therein. Doubtless the instructions in this respect might have been less involved and plainer, yet, short of legal error, there is no cause for reversal of judgment. *Durgin* v. *Danville,* 47 Vt. 95.

Exception was taken to the failure to charge what constitutes a tenant at will under the facts of the case; also to the charge in allowing the jury to find that the defendant was a tenant from year to year at the time of the bringing of this suit. As to the first, it is said that the court did not instruct the jury concerning the law in case the defendant went into and remained in possession for the purpose of caring for the plaintiff's fowls, provided the occupancy was incident to such purpose. But the record shows that the court attempted to do just this. At most, it can be justly claimed only that the instructions in this respect should have been fuller and with more specific reference to the facts in evidence, a defect or shortage, if it be a defect or shortage, which cannot be reached by an exception pointing to an omission to charge on the subject. *Magoon* v. *Before,* 73 Vt. 231, 50 Atl. 1070. As to the second, the defendant's testimony was such that, if believed in its essential particulars touching the contract and the operations under it, the jury might properly find her to be a tenant from year to year when this action was commenced.

*Judgment reversed, and cause remanded.*