JAMES WILLIAMS *v.* JOSEPH A. MARINI.

May Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 28, 1932.

14

*Fenton, Wing, Morse & Jeffords* for the defendant.

*Jones & Jones* for the plaintiff.

Powers, C. J. This is an action for malpractice charging a graduate and licensed osteopath with negligence in the care of the plaintiff's foot. A jury trial resulted in a verdict for the plaintiff, and the defendant excepted. The latter seasonably moved for a directed verdict for lack of evidence tending to

establish liability on his part, and an exception to the refusal of the court to comply therewith is for first consideration.

The defendant was called by the plaintiff on the morning of August 15, 1930, to the latter's house in Rutland. On the afternoon of that day, at the defendant's office, a further examination of the foot was made, and the defendant then removed the nails of two toes which he said were already infected. He then cleansed and bandaged the foot, and advised the plaintiff regarding its care. The defendant had charge of the case until and including August 22. He gave the foot attention, administered remedies to relieve the pain, and gave directions regarding the home treatment of it. On the 23rd, the plaintiff called Dr. Hammond, a physician of long experience, who gave evidence tending to show that the foot was then in a very bad condition; that the little toe was entirely black, and that the discoloration extended up the foot and into the ankle; that the toes were gangrenous and had been for at least three or four days. According to the evidence, it was a case of "dry" gangrene, which is self-limiting, and there was nothing to do but await that result. This was done, and when the limitation appeared, the leg was amputated above the knee, as was necessary.

The transcript is referred to, and discloses the sharp conflict in the evidence that is usual in such cases. If we were at liberty to accept the defendant's evidence as establishing the essential facts, there would be merit in his motion. But, of course, we cannot. It is the plaintiff's evidence that must, not only be regarded, but favored. We agree that the defendant's care of this patient must be tested by what good osteopathic treatment required, and by that alone. *Wilkins, Admr.* v. *Brock,* 81 Vt. 332, 344, 70 Atl. 572. And we will assume that the case was such that it required expert evidence from qualified osteopaths to sustain it. This does not imply, however, that only practitioners of that school could be used as experts at the trial. Very many questions pertaining to the diagnosis, physical conditions and what they indicated, the progress of the infection and other observed facts and their significance, could be established by regular physicians; indeed, some of them, at least, could be shown by unskilled observers. But when the propriety of the treatment from an osteopathic standpoint is the question, the ordinary physician should be rejected as a competent expert, unless it is made to appear that both the

schools to which the witness and the defendant belong require and employ the same treatment. *Grainger* v. *Still,* 187 Mo. 197, 85 S. W. 1114, 70 L. R. A. 49, 59; *Cook* v. *Moats,* 121 Neb. 769, 238 N. W. 529, 78 A. L. R. 694, and note. This is a corol-lary to the proposition that the skill of any practitioner of medicine is to be judged by the requirements of his own school.

██ ██ Expert osteopathic evidence was produced at the trial. While the transcript shows an indication of the doctors. to wander from the questions asked and embody in their replies. statements as to what they would have done in the circum-stances either shown or supposed, which, standing alone, would be inadmissible, *Parker* v. *Bowen,* 98 Vt. 115, 119, 126 Atl. 522, yet, taking the questions and answers together, it fairly appears. that what they intended to state was what good osteopathic practice in the general vicinity of Rutland and as there prac-ticed by physicians of that school, required. The plaintiff re-lied upon negligence, in the diagnosis. The defendant testified that, at the outset, he tested the patient's circulation by pal-pation, only. Dr. Loudon, an osteopath, said that this was cor-rect so far as it went, but that when the discoloration appeared and extended up the foot, it evidenced a very serious condition which probably required the services of a major surgeon, to whom the case should have been turned over. It was the faulty circulation that caused the trouble. This fact seems to have been understood by the defendant, for he recommended and pro-vided for hot applications to improve the circulation. Dr. Sherburne, an osteopath, testified to the effect that the defend-ant's treatment was not up to the standard of good osteopathic practice, which required that it should have been supplemented by manipulative work to accelerate the circulation. There was also evidence from one or both of these osteopaths that pal-pation alone in the preliminary examination of a case like the one presented to the defendant would not be sufficient, and that the heart should have been tested, the blood pressure taken, and an analysis of the urine made. The testimony of the plaintiff and that of his daughter as to the condition of the foot, its treat-ment by the defendant and the progress of the disease, supple-mented by that of the medical and osteopathic experts, made a case for the jury on the question of the defendant's negligence.

The defendant also relies upon the claim of contributory negligence as a ground of his motion for a verdict.

■ ■ There was some evidence that the plaintiff disregarded the defendant's advice in the care of the foot, and that he walked on it contrary to instructions. This was controverted. It is enough here to say that it nowhere appears so plainly from the transcript that the conduct of the plaintiff amounted to contributory negligence that, as a matter of law, it would bar a recovery. It may be that it should have reduced the recovery. But there is no evidence of anything said or done by the plaintiff that led the defendant into error in either the diagnosis or treatment, or had any part in the creation of the cause of action relied upon. If the plaintiff was negligent at all, his negligence merely supervened upon that of the defendant, and only affected the amount of damages. *Wilmot* v. *Howard,* 39 Vt. 447, 457, 94 A. D. 338. See *Hathorn* v. *Richmond,* 48 Vt. 557. The exceptions under discussion is not sustained. By his supplemental request No. 3, the defendant asked the court to charge the jury that his failure to take the blood pressure of the patient could not be considered as evidence of malpractice. The request was properly refused. As we have seen, there was osteopathic evidence in the case showing that a retarded circulation in a man of the plaintiff's age would be a condition requiring careful consideration by an osteopath before performing the operation on the foot, and that the blood pressure would have disclosed the condition that caused the trouble. It is no answer to this to say that the nails had to be removed. Perhaps so. But according to the evidence both the operation and the after care would need to be more cautious to the end that gangrene might not result. If, as the evidence tended to show, the defendant did not know of this condition, or knowing it failed to adopt proper methods either at the operation or subsequent to it, negligence amounting to malpractice was indicated.

■ For the same reasons, the request regarding a heart test was properly denied. The defendant requested the court to exclude the use of novocaine from consideration. But that could not properly be done, because there was evidence that in view of the patient's circulation, the novocaine would be likely to further retard it and bring on gangrene. The defendant sought to excuse his failure to use manipulation to increase the circulation on the ground that it had been shown that there existed two standard modes of treatment practiced by osteopaths, one

18

of which was the one used by the defendant. The court correctly instructed the jury on the subject of alternative methods of diagnosis and treatment, but declined to comply with request No. 7. This ruling was correct. The request ignored the evidence that while hot applications is one way of increasing the circulation, in this case it should have been supplemented by manipulation.

■■ The defendant's request No. 3, sought an instruction that the defendant's lack of skill or negligence was not to be tested by the result. The request was embodied in the language of this court in *Sheldon* v. *Wright*, 80 Vt. 298, 316, 67 Atl. 807, and complaint is made because the language of the request was not followed by the court. What the court said on the subject of the request was this: "Whether or not the defendant in this case possessed and exercised the requisite degree of skill and knowledge is not to be determined by the result of the treatment." In effect, this was repeated. It was a substantial compliance with the request, and that was all the defendant was entitled to. A literal compliance was not required. A court may select its own language, and how far it shall go in elaboration of the point is within its own discretion. This has been the law of this State ever since *Holbrook* v. *Hyde*, 1 Vt. 286, 300. Such is the doctrine of *Durgin* v. *Town of Danville*, 47 Vt. 95, 107; *Desmarchier* v. *Frost*, 91 Vt. 138, 144, 99 Atl. 782, *DeNottbeck* v. *Chapman*, 93 Vt. 378, 382, 108 Atl. 338.

■■ There was no error in submitting the question of negligence in the diagnosis. That one who employs a physician is entitled to a reasonably thorough and skillful examination before a remedy is applied is too plain for argument. *Willard* v. *Norcross*, 86 Vt. 426, 440, 85 Atl. 904. What such an examination would involve in a particular case would depend somewhat upon the patient's condition and the opportunities open to the physician. His conduct is always to be judged, not only by what he discovered by such examination, but also by what he ought to have discovered; that is to say, by what the average practitioner of his particular school in that general locality would have discovered. (It is, of course, impossible to lay down a rule that will apply to every case presented, but it can safely be said that in cases where an operation is necessary, an examination with reference to the patient's condition in such par-

ticulars as would affect the methods to be employed and the precautions to be taken is required by the due care rule. All this would be a part of a proper diagnosis, which includes the collection of the data essential to a proper conclusion as to the condition of the patient and the methods to be adopted to effect a cure.] See *Staloch* v. *Holm*, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712, 715; *Rogers* v. *Kee*, 171 Mich. 551, 137 N. W. 260, 262, 263.

As we have seen, there was evidence that the defendant failed in his duty in this respect.

 There was no error in the charge relating to a presumption that the defendant had and exercised the requisite care and skill. The court instructed the jury that there was no presumption that he did or did not have and exercise such care and skill, and that the burden of proof was on the plaintiff. This was in exact accord with *Sheldon* v. *Wright*, 80 Vt. 298, 67 Atl. 807.

 Nor was there error in submitting the question of the propriety of the use of novocaine on the foot. We have already referred to the evidence to the effect that this was improper in view of the plaintiff's condition and that it would probably result in gangrene.

 The instruction to the effect that a sick man is not to be expected to exercise the same discretion and judgment as a well man was not error as applied to this case. The evidence tended to show that the plaintiff was suffering intense pain during the defendant's treatment, and that he could not sleep during that time. The charge referred to the question of contributory negligence, a question that always turns upon what a prudent man would do in the circumstances. This plaintiff's condition at the time in question was one of the circumstances to be considered in connection with the question of his due care. It is quite apparent that one in the condition in which he was (according to the evidence) could not be held to the same line of conduct as a well man. We find no error in the instruction, and especially any that should work a reversal.

 Nor do we find anything in Dr. Hanrahan's testimony that warrants a reversal. He testified that the use of the novocaine was harmful, that septicemia is blood poison tainting the whole circulatory system, that the nails could have been removed to the patient's advantage if this was properly done,

and that a general anesthetic should have been used. The objection was that the witness was not an osteopath, and so was not a competent witness on these matters. But, as we have seen, on general medical matters he could testify. The nearest the doctor came to transgressing the rule was when he said that a general anesthetic should have been used. But in this he was not attempting to say what good osteopathic practice would require, but was merely stating the medical fact that novocaine would and a general anesthetic would not still further retard this plaintiff's circulation. The application of the rule contended for by the defendant has been hereinbefore approved. But the test of its applicability is not what school the medical witness is of, but by the premises from which he testifies. *Swanson* v. *Hood*, 99 Wash. 506, 170 Pac. 135. Construed as above, the testimony was unobjectionable.

The defendant is not in a position to assert error in the admission of the hypothetical question asked Dr. Loudon. He now complains that it included a reference to the sixth and the seventh days of the defendant's treatment, when the evidence shows that the reference should have been to the fourth and fifth days. Any error in this respect was evidently due to a faulty recollection of counsel; and, if the defendant regarded it as of any consequence, he should have called attention to it at the time, that the inadvertence could have been corrected. This he did not do. All he did was to charge that the question contained misstatements of fact other than those specifically pointed out. But he did not point out this misstatement or ask for time to examine the question for faults of this character. This he should have done. See *Herrick* v. *Town of Holland*, 83 Vt. 502, 508, 77 Atl. 6; *Moore* v. *Duke*, 84 Vt. 401, 407, 80 Atl. 194.

The trial was marred by an unfortunate and wholly unnecessary incident which resulted in an exception now relied upon. The defendant was a witness in his own behalf, and in his testimony he insisted upon characterizing the plaintiff's conditions as a case of ''local infection,'' while counsel for the plaintiff insisted on calling it ''septicemia,'' which the witness admitted was the same thing. The court became involved in this controversy, and charged the witness with ''hedging'' and ''butting in.'' To the remarks of the court, the defendant excepted. Without intending to magnify the importance of this

exception, we take occasion to say that neither counsel nor the court itself can, intemperate and indecent language aside, dictate to a witness the particular terms in which he shall clothe his testimony. If there are two terms meaning the same thing, the witness may choose which one he will use. At the same time, a cross-examiner is entitled to a frank and direct answer to his proper questions, and it is the province of the court to see that he gets it. On the whole, giving the defendant all that the exception merits, we think that no harm is shown, and that the error of the court, if any was committed, is not of sufficient consequence to warrant a reversal.

*Judgment affirmed.*