MASSENA SAVINGS BANK, Appellant, v. R. A. GARSIDE.

**Attachment:** EVIDENCE: VALUE OF USE OF ATTACHED PROPERTY. In 1 this action the defendant, in support of his counterclaim for damages because of the wrongful suing out of the attachment, testified to the value of the use of the property levied upon, which was a livery stock, and that subsequent to the attachment he had leased substantially the same property. *Held,* that the rental he was to receive was competent evidence on the question of the value of the use of the property of which he was deprived by the attachment, and should have been received.

**Same:** EVIDENCE: HEARSAY. Evidence concerning what a third party 2 said it would cost to repair the attached property after its return was hearsay and incompetent on the question of damage to the property.

**Same:** EVIDENCE: WRONGFUL ATTACHMENT. Evidence that plaintiff 3 failed to consult a third person concerning defendant's indebtedness before instituting the suit was immaterial on the question of wrongful attachment, and was prejudicial.

**Same.** Evidence that a third party, without authority from defend-4 ant, offered to settle his indebtedness to plaintiff was immaterial on the question of wrongful attachment.

**Same:** EVIDENCE OF COMPROMISE AND SETTLEMENT. As a general rule 5 evidence of an offer to compromise and settle a cause of action

is inadmissible. In this action a portion of a writing relating directly to the proposition of compromise contained therein should not have been received, and the error in admitting the same was not cured by admission of the balance of the writing.

Same: WRONGFUL ATTACHMENT: EVIDENCE OF MOTIVE. Letters written by a plaintiff in attachment to third parties, after commencement of the suit and relative to settlement of the action, were inadmissible, because having no bearing on the question of motive in bringing the suit.

Same: EVIDENCE: IMPEACHMENT: COLLATERAL MATTER. A party should not be permitted to introduce evidence of matters entirely foreign to the issue, for the purpose of laying the foundation for impeachment, and with the view of introducing prejudicial matters into the case.

Same: WRONGFUL ATTACHMENT: DAMAGES. The compensation to be allowed for wrongful attachment on account of attorney's fees, loss of time and expenses in consulting attorneys and attending court, should be limited to such as are reasonably necessary to procure a release of the attached property, or in making defense; and no more should be allowed as attorney's fees than the services rendered are worth, whether performed by one or more.

*Appeal from Cass District Court.*—HON. E. B. WOODRUFF, Judge.

MONDAY, APRIL 10, 1911.

ACTION on promissory notes and an overdraft aided by writ of attachment. Defendant admitted the indebtedness, and the only issues tried were raised by the counterclaim. Damages having been allowed thereon, plaintiff appeals. *Reversed.*

*Thomas B. Swan* and *J. B. Rockafellow,* for appellant.

*Atchison & Weeks,* for appellee.

LADD, J.—When this action was begun, August 31,

1908, the plaintiff held ten notes executed by the defendant and he was owing it $363.60 on overdrafts. But two of the notes were past due, one for $362.65 and another for $108. Four others of the face value of $989.12 were payable later in 1908, three of the face value of $1,100 were payable in 1909, and one of $400 in 1910. The defendant refused to pay the notes due or the overdraft unless the band would surrender a $1,500 note held, as was claimed, by it as collateral security, though this was denied by defendant, and, after some negotiations, as he persisted in such refusal and declined to secure the indebtedness to the bank, this action on all the notes and overdrafts was begun, being aided by a writ of attachment which was levied on several parcels of real estate, a livery stock, a stallion, and a jackass. The sheriff retained the property seventeen days, when it was released by the execution of a bond conditioned to perform whatever judgment might be entered. The defendant admitted that but for the counterclaim plaintiff was entitled to recover on the several counts of the petition. In the counterclaim the writ of attachment was alleged to have been sued out without probable cause and with malice, and the defendant to have suffered damages aggregating $10,000. Forty-two errors are assigned, but only those essential to a proper disposition of the case will be considered.

I. The defendant testified that the use of the livery stock in connection with the barn was worth $60 per week. On cross-examination he named the expenses incident thereto, and said that about six weeks previous he had leased "practically the same outfit" he had prior to the attachment, except that he did not have quite as many horses. He was asked at how much per day, and an objection as immaterial, incompetent, and irrelevant was sustained. It should have been overruled. The leasing was but about six months subsequent to the time in ques-

1. ATTACHMENT: evidence: value of use of attached property.

tion, and evidence of the rental he was to receive would have been material in determining the reasonable value of the use of which he was deprived by the levy of the writ of attachment.

II.   Defendant claimed $400 as damages because of alleged injuries to an automobile while retained by the sheriff, and in support thereof testified that he had not had it examined since being returned to him,

2. SAME: evidence: hearsay.

and that one man wanted to fix it.   "Q. What did he say it would cost to fix it?" Objection as incompetent, immaterial, irrelevant, and hearsay was overruled and he answered: ".Why, not to exceed hundred dollars."   That this was hearsay and incompetent is manifest.

III.   George Garside, a brother of defendant, testified to a conversation with the cashier of the bank after the levy of the writ of attachment, and was asked: "What did he say with reference to Robert Gar-

3. SAME: evidence: wrongful attachment.

side as to the notes or claims the bank held in this attachment suit?"   Objected to as incompetent, immaterial, irrelevant; it not appearing that the declarations were made by the cashier when engaged in any business for the bank.   This was overruled, and the witness answered: "Why, he claimed that my brother would not settle the overdraft.   And I asked him why he did not see me before he run the attachment.   Q. What reply did he make to that;"   Same objection overruled. "A. He did not make any particular reply.   I told him we had never refused to help my brother, and I thought he ought to let me know the circumstances before he ran the attachment.   He advised me not to go on my brother's papers for anything."   The plaintiff was not required to consult defendant's brother before instituting the suit, and the evidence tending to show delinquency in this respect should not have been received and was prejudicial.   True, the first inquiry did not call for the answer given, but the

defendant was subsequently permitted to show that the cashier impliedly conceded his neglect in this respect. The objections should have been sustained.

IV. The same witness testified to a conversation with the cashier after the levy of the writ of attachment concerning the $1,500 note held by the bank, according to its claim as collateral security, and the witness was asked, "What did he say about that?" The same objection above mentioned was interposed and overruled. "A. I offered to turn that Joy note to pay off all of Robert's individual notes that was given direct to the bank, and he refused to do it." Counsel for plaintiff then moved that the answer be stricken as incompetent for any purpose, whereupon the court overruled the objection. We think the motion should have been sustained. There was no showing that this witness had any authority from defendant to make such an offer, and, even if he had, it was but an offer of settlement which had no bearing on whether the attachment was wrongfully sued out, and was improperly received.

4. SAME.

V. The evidence disclosed that a few days before the trial the president of the bank wrote a letter to the defendant proposing a compromise. Over objection as incompetent, the defendant was allowed to read in evidence the following excerpt from the letter: "If you do not, it will compel me to get ready for a trial, and, if you force me to fight, you may rest assured that this proposition will not be good after Saturday of this week, and you can make your arrangements to fight the case to the bitter end because I will not stop until justice is done to the bank, no difference how long it takes or how much money is required. Trusting that you may take this letter in the spirit in which it is written, and with best wishes, I am, very respectfully yours, James E. Bruce." The above was at the close of a letter addressed to the defendant pro-

5. SAME: evidence of compromise and settlement.

posing to compromise and settle the suit, and as it was not independent thereof, but related directly in the proposition of compromise, it should have been excluded. That it may be better understood, we set out that portion of the letter which preceded it:

My Dear Sir:  I have always regretted, what seemed to be an absolute necessity on the part of our bank at Massena, the commencement of the present suit against you.  As you well know, the boys did everything possible to try and get a settlement or security before starting the suit, and it seemed that you were willing yourself to do this, but saw fit to take the advice of others.  Now, Mr. Garside, the case is set for trial next Monday, and before making additional cost on our part, I want to make a suggestion to you for a settlement.  My understanding is that there has been $1,500 paid in on the collateral.  If you will apply this amount on the indebtedness and give the bank security on the balance of the indebtedness, we will give you one, two or three years' time as you may need, and we will divide the costs with you, that is, we will pay one-half of all costs you pay the other one-half. I am very sure, Mr. Garside, that this will save us both attorney's fees, time, worry and costs and be much better for both of us.  This proposition is made to you as an offer of compromise and settlement, and is not to be considered or used for any other purpose, and shall not in any way prejudice the right of any of the parties to the suit referred to.  My son, Clarence, expects to be in Massena on Wednesday of this week, and if this proposition is acceptable to you, you can fix the matter up with him.  I want you to understand that I want to be fair and I believe that this is a fair proposition, and I trust that you may see fit to accept it.

That the letter was an offer of compromise is manifest, and under rules too well settled to require discussion was not admissible in evidence. *Boylan v. McMillan,* 137 Iowa, 142.

The introduction of the portion last quoted by appellant did not obviate the error, but was permissible, inas-

much as a part had been erroneously received, to remove the sting as far as possible. At the same time the president of the bank wrote two of defendant's brothers, expressing to each his regret that the bank was compelled to institute suit against defendant, and that he had made the offer of compromise in the letter quoted, adding: "If I am compelled to go ahead and fight him, there will be no use talking settlement until the court of last resort finally settles it. I am sending you this letter so if you are so disposed you can counsel Robert concerning it. With continual kind regards and best wishes, I am respectfully yours." The closing portion of each letter was introduced in evidence over objection. This was error. Neither letter had any bearing whatever on the motive of the bank in instituting the suit seven months previous and the letters should have been excluded from evidence.

*6. SAME: wrongful attachment: evidence of motive.*

VI. The plaintiff sought to show that shortly before beginning the suit the defendant had negotiated for the exchange of his property at Massena for land, and for this purpose called P. R. Smith, who testified to making a trip with him to South Dakota with one Carey to show land. In rebuttal Geo. Garside was called by defendant, and, after stating that upon the return of his brother from South Dakota he had a conversation with Smith at the latter's office, this question was propounded: "I will ask you to state if said Smith, in substance, asked you to ask Robert to make the trade, referring to the trade for the Dakota land, and said that the bank would close him out, and beat him out of every dollar; he did not know why Robert would not trade; Bob had better trade; I advised him to do so, and deed the Dakota land to his wife, in his wife's name—did you have such conversation with Mr. Smith or any in substance that at that time and place? (Objected to as not rebutting testimony and as incompe-

*7. SAME: evidence: impeachment: collateral matters.*

tent, immaterial and irrelevant and hearsay. Overruled. Plaintiff excepts.) A. Yes, sir; I did. Q. I will ask you if you had any conversation on the fair grounds of Massena, Iowa, last September after the attachment of your brother's property had been levied on in which he said Smith said that the bank would beat Robert out of every dollar, or in substance that? And in the same conversation that he wanted your brother to put his property in his wife's name, or in substance that? (Objected to as not rebutting testimony, incompetent, immaterial, irrelevant and hearsay and not proper impeaching testimony. Overruled. Plaintiff excepts.) A. Yes, sir; he did." The rulings were erroneous, and manifestly very prejudicial. Supposing Smith did have such a conversation, it had no bearing upon the issues. It was merely an expression of opinion by a person in no wise interested in or connected with the suit, and, even though an attempt had been made in the cross-examination of Smith to elicit similar statements, it furnished no warrant to inject such matters into the case through specious attempts at alleged impeachment.

VII.    Exception is taken to several of the instructions and to other rulings on the admissibility of the evidence. Criticisms of these likely will be obviated on another trial. It may be well to say, however, that a party is not entitled to compensation for time and expenses on every occasion he chooses to consult an attorney in such a case. To warrant such compensation, it must appear that the conference was reasonably necessary in order to procure the release of his property from the levy or in the preparation of the defense against the alleged wrongful suing out of the writ. Nor can a party be allowed for loss of time and expense when in attendance at court, unless this appears to have been reasonably necessary in making defense. Here defendant employed attorneys at different county seats, and, without any showing that these were necessary, his claim

8. SAME: wrongful attachment: damages.

for value of time and expense for visiting one firm of attorneys three and the other five times was submitted to the jury, as was also his claim for time and expense in attending court eight days, though the cause was not then tried, and his attendance was not shown to have been necessary. Again, the amount taxed against plaintiff as attorney fees seems excessive. No evidence appears to have been introduced as to value of the services rendered; the court acting on its own knowledge. The questions involved in such litigation are not complicated, and, even though counsel may have achieved a signal victory in convincing the jury that the attachment was wrongfully sued out, the record did not warrant the assessment of $800 for the services rendered.

Even though a party may employ numerous attorneys, no more should be allowed than the services rendered are worth, whether rendered by one or more than one. Otherwise a defendant in such a case might enhance the amount to be assessed against the adverse party by inducing every attorney possible to join in the defense.

.For the errors pointed out, the judgment is *reversed.*