**WILLIG, Appellant v PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellee.**

Ohio Appeals, 1st District, Hamilton County.

No. 6177. Decided November 23, 1942.

Mr. David B. Wood, Cincinnati, and Mr. Leo J. Brumleve, Jr., Cincinnati, for appellant.
Messrs. O'Brien & Beck, Cincinnati, for appellee.

494

## OPINION

By MATTHEWS, P. J.

This is an action by the beneficiary of a policy of insurance upon the life of Laura P. Willig. The only issue of fact was raised by the reply traversing the allegations of the answer that there were false representations made in the application for insurance, that the insured was last sick in December, 1937, that she had never suffered from cancer, had not received treatment by a physician or at a hospital during the preceding three years, and that these false representations were made wilfully and fraudulently, with intent to induce the defendant to issue the policy of insurance and that the defendant was so induced to issue the policy.

The jury returned a verdict for the defendant and judgment was entered on the verdict. It is from that judgment that this appeal was taken. The evidence was conflicting and it is conceded that there was sufficient evidence to support the verdict.

Many errors are assigned in the trial of this issue.

(1) Two physicians who had treated the insured, as her physicians, during the three years immediately preceding the application for the insurance were called as witnesses by the defendant. The court, over the objection of the plaintiff, permitted these physicians to testify that the insured had been their patient during the three years, and up to the time of the application for insurance, but refused to permit them to testify to the nature of the treatment, the disease from which she was suffering, any communication made by her, or their advice to her, but the court did permit them to testify that an operation was performed upon her at St. Mary's Hospital, where she had been sent on the advice of one of them, and that one of the physicians had treated her with x-rays.

It is urged that the admission of this evidence violated the provisions of §11494 GC, making a physician incompetent to testify "concerning a communication made to him in that relation or his advice to his patient."

Does this statute preclude the physician from testifying that the relation of physician and patient existed at a specified time? It seems to us clear that it does not. Until the relation is disclosed, there is no privilege to be protected. The mere fact that the witness is a physician does not render him incompetent to testify either as to his advice or as to the person's physical condition. The court must find that the confidential relationship existed before it would be justified in ruling that the physician could not testify, and the

court could only so find after hearing evidence on the subject in an open trial. The statute does not draw the cloak of secrecy over the fact that the relationship existed, but only over the interchange within the relationship.

That the physician is not incompetent as a witness as to the existence of the relationship (which, of course, includes consultation and advice as to some sickness) has been decided. **Russell v Penn Mutual Life Insurance Co., 35 Abs 516;** 8 Wigmore on Evidence (3rd ed.), Section 2384, and cases cited in annotation to the text.

So we conclude that the physicians were not rendered incompetent to testify as to the existence of the relationship. And this competency extends to testimony as to the number of visits and the fact that treatment was administered.

One of the questions in the application for insurance, to which a negative answer was given, was as to whether the applicant had received treatment by a physician during the preceding three years without reference to the specific nature of the treatment. Under the authorities the physicians are competent witnesses as to that matter.

There was therefore competent evidence to the falsity of the answer to that question.

And such testimony is evidence that the applicant was not in good health. In 8 Wigmore on Evidence (3rd ed.), Section 2384, at page 825, it is said:

"This distinction is often of some practical significance; for example, in life insurance cases, the insured's allegation of complete health during a certain period may be disproved by the fact that a physician was often consulted."

The author supports his text by citations of cases from fourteen states and there seem to be no cases holding to the contrary. We see no violation of the confidential relationship in such testimony.

Objection was made to the introduction in evidence of a portion of a hospital record. The part admitted showed the name of the patient who was the insured, the date of admittance to the hospital, and the name of the attending physician. We think this was competent for the reasons given for the competency of the physicians to testify to the same matters.

Furthermore, the plaintiff testified that the insured had been treated by these physicians and had been in St. Mary's Hospital. While he testified that he had thought all or most of these incidents had occurred more than three years before the application,

for insurance, he concluded, after his memory had been refreshed, that he had been mistaken as to the time and that they had occurred within the three years. There could, therefore, have been no prejudice, even had the hospital record and the physicians' testimony been incompetent.

And in view of the plaintiff's testimony. there was no issue as to the falsity of the answer, and the only issues raised by this defense were whether the insured had made the answer, and, if so, whether she had made it wilfully and fraudulently.

(2) The testimony presented an unusual situation. The plaintiff testified that he made the answer to the question as to whether the insured had received treatment during the preceding three years, whereas, the defendant's agent testified that the insured answered that question, and that he inserted it as she made it. Faced by this conflict in the evidence, the court charged the jury that:

"The plaintiff, Edward William Willig, the beneficiary under the policy cannot recover in this case if he participated in giving any answers contained in said application which were wilfully false and fraudulently made and was material and induced the insurance company to issue said policy, and but for such answers the insurance company would not have issued a policy, and if the agent and the company had no knowledge of the falsity or fraud of such answer if such answer was false or a fraud."

The answer asserted only fraud by the insured, and it is assigned as error that the court submitted an issue to the jury not raised by the pleadings or authorized by the law.

There was also a conflict in the evidence as to whether the insured had answered any of the material questions in the application. The defendant's agent testified that she had answered all of them, and that he had written the answers in the proper blank space just as she had given them, before she signed the application. The plaintiff's testimony tended to prove that the insured did not answer the questions but signed the application with the questions unanswered and the defendant's agent inserted the answers thereafter, without consultation with the insured. It was undisputed that the application with the answers to the questions included was made a part of the policy which was delivered to the insured and that she had it in her possession for more than six months prior to her death, during most of which time she was entirely capable of examining it and comprehending its contents.

In view of this situation presented by the evidence, the court charged the jury that:

"If a part of such answers were made by the beneficiary, the plaintiff, Edward William Willig; or part by the insured and a part

by the agent of the insurance company, if the insured signed the application with the answers in it, of if said application with the answers in it was accepted by the insured and used as a basis of securing the insurance policy issued to her, she would be bound by the answers in said application, notwithstanding she may not have personally given the answer nor answers when written in the application."

It is urged that there is no justification in the law for this charge and that it violates the provisions of §9391 GC, by which it is provided that:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer."

We do not regard these portions of the charge as submitting issues not raised by the pleadings, or as holding the insured responsible for acts of others. We consider them as submitting the issue of fraud, raised by the pleadings, as developed by the evidence. As is said in **39 O. Jur., 948:** "The charge of the court should be in the concrete, applicable to the particular facts and issues of the case on trial—adapted to the facts and issues raised by the evidence adduced by the parties, which the jury has to decide with a statement of the law applicable thereto." and as applied to the evidence in this case the jury was entitled to know the legal effect of the plaintiff's participation in the answers to the questions and the effect of the insured's acceptance and adoption of the answers by others.

And the charge correctly stated the law as applied to the facts. It informed the jury that the insured was bound by the answers under such circumstances, notwithstanding she may not have personally given the answers. This is no more than the statement of the familiar rule that if a person adopts the act or work of another, he thereby makes it his own.

Giving application to this principle in this case does not violate §9391 GC. It only makes the answers the answers of the insured. Being charged or bound by those answers did not in itself preclude recovery. Although bound by the answers, the plaintiff could still recover unless the evidence clearly proved that the false answers

were made by the insured wilfully and with a fraudulent intent and that the defendant's agent had no knowledge of the falsity or fraud. In other parts of the charge the court so instructed the jury.

(3) The defendant requested and the court gave this special charge:

"The court charges you that an answer to the interrogatories in the application which is material and but for which the defendant insurance company would not have issued the policy and which answer was falsely made and known to be false shall be presumed to have been made wilfully and with intent to deceive."

The appellant contends that this charge was the equivalent to holding that the plaintiff was estopped from denying that the answers were made wilfully and with a fraudulent intent. The charge does not so state. This charge incorporates the general rule that a person is presumed to intend the natural and usual consequences of his intentional acts. The presumption is not conclusive, and the charge does not state that it is.

In **17 C. Jur., 113,** it is said: "But there is a presumption that every person anticipates and intends the ordinary and probable consequences of his deliberate acts. and to that extent fraud may be presumed" and at page 99, the rule is stated generally that: "It is an axiom of the law that a man is presumed, as a general rule, to intend the natural and probable consequences of his own voluntary and deliberate acts—the result which his acts are reasonably calculated to accomplish—unless the circumstances in the particular case show the absence of such intent."

We find no error in this charge.

(4) The appellant assigns the refusal to give a special charge requested by him, which substantially follows the provisions of §9391 GC. While this charge contained a correct statement of the law. the refusal to give it was proper, because the court had given another charge requested by appellant, which differed in no substantial respect from it and to have given it would have been repetitous.

We are of the opinion that the issues in this case were submitted to the jury under instructions that set forth the applicable law, and that no prejudicial error intervened.

The judgment is affirmed.

ROSS and HAMILTON, JJ., concur.