BENJAMIN W. WHEATLEY, as next friend of BRENDA WHEATLEY, a minor, appellant, v. H. F. HEIDEMAN, appellee.

No. 49888.

(Reported in 102 N.W.2d 343)

APRIL 5, 1960.

Fisher & Pickens and Harry Wilmarth, all of Cedar Rapids, for appellant.

Alex M. Miller, of Des Moines, and D. M. Elderkin, of Cedar Rapids, for appellee.

GARFIELD, J.—This is a law action for damages against H. F. Heideman, an osteopathic physician at Coggon (1950 population 604), for alleged negligence in treating an injured eye of two-year-old Brenda Wheatley, herein referred to as plaintiff. The action was brought in her behalf by her father as next friend. Trial resulted in a jury verdict for defendant. From judgment thereon plaintiff appealed.

Monday, November 15, 1954, plaintiff's right eye was injured while playing in her parents' farmyard. The child came toward her mother crying "chickie, chickie." The eyelid was cut about one-fourth inch in length and fat tissue about the size of a pea protruded from it. The mother assumed the cut was

caused by a chicken or rooster. She immediately took the child to defendant, closest doctor to their farm. He had previously treated others in the family.

Defendant pushed the protruding tissue back into the wound in the lid, cleansed and sterilized it, applied a local anaesthetic, took three stitches in the incision, bandaged it, prescribed some ointment for the mother to put in the eye and told her to return the child on Wednesday. After the tissue was pushed back into the incision plaintiff was placed on a treatment table, her arms under her sides, a towel wrapped around her to restrain her and defendant, his wife who served as a nurse, and plaintiff's mother, at defendant's request, held the child. Defendant then attempted with the aid of a 100-watt light to examine the eyeball to see if it was injured. He testified that because of plaintiff's struggling he was able to see the eye by fleeting instances only. He admitted, however, that in sewing up the wounded lid he inserted a needle in it six times.

At defendant's direction the child was returned to defendant for treatment on Wednesday, Monday, November 22, and Wednesday, the 24th. Defendant removed the stitches from the lid on the 22d. Mr. and Mrs. Wheatley testified they also returned to defendant with Brenda on Wednesday, December 1. Defendant and his wife denied this. The parents took plaintiff to Dr. Wayne J. Foster, an eye specialist in Cedar Rapids, December 3. He found a cut in the eye itself directly beneath the cut in the lid. Sight could not be restored to the eye, Doctor Foster removed it April 20, 1955, and a glass eye was inserted.

Plaintiff contends defendant should have discovered the injury to the eye itself and should not have done what he did to the lid without first examining the eyeball. There is substantial evidence the eye could probably have been saved by prompt treatment within two or three days from the time of the injury but this was impossible after a delay of more than two weeks. This and other testimony will be referred to later in considering the assigned errors.

I. Plaintiff first assigns as error the trial court's refusal to require defendant to reveal the names of those in his office when plaintiff was there for treatment. Plaintiff attempted to obtain

these names by written interrogatories under rules 121 et seq., Rules of Civil Procedure, and by deposition of defendant pursuant to rules 140 et seq. When the deposition was taken defendant refused to give such names on the ground he was not privileged to answer, presumably because of section 622.10, Codes, 1954, 1958, forbidding disclosure of any confidential communication between physician and patient and those in some other relationships. Further ground of the refusal was that defendant could not be required under rule 143 to list the witnesses he expected to call at the trial. Defendant admitted he knew the names plaintiff sought to obtain and their addresses.

Upon plaintiff's application under rule 134 to compel answers the court did not sustain either of the above grounds of defendant's refusal but denied the application on the ground, not advanced by defendant, the information was irrelevant. Plaintiff later sought to obtain this information by other written interrogatories but the trial court again ruled, this time on defendant's objection, it was irrelevant.

Subject to certain restrictions not here applicable rule 143 provides a "deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * * provided that a party shall not be required to list the witnesses he expects to call at the trial. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Importance to plaintiff of the names of those in defendant's office when she was there is clear from what transpired at the trial. Defendant contended and offered evidence that on plaintiff's first visit to his office he advised Mrs. Wheatley to take the child to the specialists, Doctors Foster and Noe in Cedar Rapids, and the parents did not follow the advice. Plaintiff contended, however, and offered testimony that no such advice was given until December 1 which was much too late for effective treatment of the cut eyeball. Witnesses for defendant, present in his office outside the room in which Brenda was being treated, testified to hearing statements by defendant to Mrs. Wheatley.

The court instructed the jury that if on the first occasion defendant was consulted he advised the parents to take Brenda to a specialist and they did not follow the advice the verdict should be for defendant. .

The court was correct in not sustaining the grounds on which defendant refused to divulge the information sought. It was not privileged under Code section 622.10. Cross v. Equitable Life Assurance Society, 228 Iowa 800, 806, 293 N.W. 464, and citations; Kaplan v. Manhattan Life Ins. Co. of New York, 71 App. D. C. 250, 109 F.2d 463, 465; Willig v. Prudential Ins. Co. of America, 71 Ohio App. 255, 49 N.E.2d 421, 422, and citations; 58 Am. Jur., Witnesses, section 421; 97 C. J. S., Witnesses, section 295c, pages 835, 836.

Nor did the written or oral interrogatories require defendant to list the witnesses he expected to call at the trial. Hitchcock v. Ginsberg, 240 Iowa 678, 37 N.W.2d 302, and citations; Article by Prof. Allan D. Vestal, 43 Iowa Law Review 8, 31.

We think the court was in error in ruling the desired names were irrelevant. Rule 143 as amended in 1957 is basically rule 26(b), Federal Rules of Civil Procedure, with the added proviso "that a party shall not be required to list the witnesses he expects to call at the trial." Article by Professor Vestal, supra, at page 34.

In Iowa and elsewhere provisions for discovery are interpreted broadly and liberally to effect their purpose. Hardenbergh v. Both, 247 Iowa 153, 160, 161, 73 N.W.2d 103, 107, 108, and citations; 17 Am. Jur., Discovery and Inspection (1957), section 6; Annotation 8 A. L. R.2d 1134, 1136, 1137.

27 C. J. S., Discovery (1959), section 20, page 46, states: "The modern policy * * * is that the utmost liberality should prevail in the matter of discovery, the trend being to broaden the scope of discovery so as to give litigants access to all material facts * * *." To like effect are Id., section 21; Hitchcock v. Ginsberg, supra, 240 Iowa 678, 679, 37 N.W.2d 302, 303; Nehring v. Smith, 243 Iowa 225, 228, 49 N.W.2d 831, 833; Hardenbergh v. Both, supra.

■ The test of relevancy under our present rule 143 and federal rule 26b is relevancy "to the subject matter involved in the pending action." The federal courts have frequently held the term relevant is not here used in the narrow sense of determining admissibility of evidence upon a trial. This is implicit from the last sentence of the rule, heretofore quoted, which provides the information sought is not objectionable if it appears reasonably calculated to lead to the discovery of admissible evidence. See Mackerer v. New York Cent. R. Co., D. C. N. Y., 1 F. R. D. 408, 409; Kaiser-Frazer Corp. v. Otis & Co., D. C. N. Y., 11 F. R. D. 50, 53; Foremost Promotions, Inc., v. Pabst Brewing Co., D. C. Ill., 15 F. R. D. 128, 129; Vilastor Kent Theatre Corp. v. Brandt, D. C. N. Y., 18 F. R. D. 199; Lewis v. United Air Lines, D. C. Conn., 27 F. Supp. 946, 948.

■ The federal courts have also held several times that "relevant to the subject matter involved in the pending action", as used in this connection, is not confined to relevancy to the precise issues in the pleadings. Kaiser-Frazer Corp. v. Otis & Co., supra; Lewis v. United Air Lines, supra; Rose v. Bourne, Inc., D. C. N. Y., 15 F. R. D. 362, 363; Enger-Kress Co. v. Amity Leather Prod. Co., D. C. Wis., 18 F. R. D. 347. See also 17 Am. Jur., Discovery and Inspection, section 12.

Interrogatories should not be disallowed as irrelevant unless clearly outside the scope of the case. United States v. Jerrold Electronics Co., D. C. Pa., 168 F. Supp. 146, 148. See also Mackerer v. New York Cent. R. Co., supra, 1 F. R. D. 408, 409.

Further discussion of plaintiff's first assigned error is deemed unnecessary.

II. Plaintiff next assigns error in the withdrawal, on defendant's motion, of all but two of her pleaded specifications of negligence. These two were alleged failure to advise plaintiff's parents (1) of the ineffectiveness and inadequacy of the treatment defendant administered and (2) that plaintiff ought to receive treatment by those qualified to administer proper and effective treatment. As previously stated, the jury was instructed that if defendant advised the parents, on the first occasion he treated Brenda, to take her to a specialist and they did not follow the advice the verdict should be for defendant.

Thus the charges of negligence submitted were confined to the advice defendant did or did not give the parents, mainly the first time he was consulted. The court withdrew from jury consideration all issues as to whether what defendant *did or did not do* in diagnosing and treating plaintiff was in accordance with the standard of care ordinarily exercised by practitioners of his school of medicine under like circumstances and in like localities. Two withdrawn specifications were in substance: (a) Failure to diligently discover the true condition from which Brenda suffered, and (c) administering treatment defendant knew or should have known was inadequate and improper.

In considering sufficiency of the evidence to support the withdrawn charges of course it is our duty to view it in the light most favorable to plaintiff. Daiker v. Martin, 250 Iowa 75, 76, 91 N.W.2d 747, 748; Law v. Hemmingsen, 249 Iowa 820, 829, 89 N.W.2d 386, 393, and citations. When this is done we think there is substantial evidence which warranted submission to the jury of specifications (a) and (c).

Malpractice may consist in lack of skill or care in diagnosis as well as in treatment. A patient is entitled to a thorough and careful examination such as his condition and attending circumstances will permit, with such diligence and methods of diagnosis as are usually approved and practiced by physicians of the same school of medicine, of ordinary learning, judgment and skill, under like circumstances and in like localities. Wilson v. Corbin, 241 Iowa 593, 597, 41 N.W.2d 702, 705, and citations; Johnson v. Borland, 317 Mich. 225, 26 N.W.2d 755, 757; 70 C. J. S., Physicians and Surgeons, section 48d, page 960. See also Van Sickle v. Doolittle, 173 Iowa 727, 155 N.W. 1007; Josselyn v. Dearborn, 143 Maine 328, 62 A.2d 174; Grainger v. Still, 187 Mo. 197, 85 S.W. 1114, 70 L. R. A. 49; Cook v. Moats, 121 Neb. 769, 238 N.W. 529, 78 A. L. R. 694; Williams v. Marini, 105 Vt. 11, 162 A. 796. In the Josselyn, Grainger, Cook and Williams cases defendant was an osteopath.

It is clear defendant failed to discover the cut in the child's eye although it was directly beneath the cut in the eyelid and caused by the same object. Dr. Alson E. Braley, head of the department of ophthalmology of the State University of

Iowa, who later examined plaintiff's eye, testified, "If you had looked at the eye, injuries of this type are visual to the naked eye." Defendant's principal excuse for not seeing the cut in the eye is that the child "wiggled so intensely it was impossible" for him to examine it. The jury was not required to accept this excuse as adequate. As previously explained, a towel was tied around the child and three adults were restraining her. If she could be kept sufficiently quiet so defendant could insert a needle in her eyelid six times the jury could find that by the exercise of the requisite skill and care he could have raised the eyelid, looked at the eye and observed the cut in it. Further, defendant testified he told Mrs. Wheatley if she was unable to put the ointment he prescribed in the child's eye he would do so daily.

Dr. Charles F. Howe, an osteopath of 32 years experience, said the usual practice would be to administer a local anaesthetic to the eye of a two-year-old child if it could not be otherwise observed, and osteopaths generally have available eyedrops that will readily "freeze" the eye so the patient feels nothing whatever. He also testified to the rather obvious fact, "It would be natural to assume that if there was a cut in the eyelid there could be injury to the eye itself." A finding that defendant was negligent in failing to diligently discover the cut in plaintiff's eye would have ample support in the evidence.

Concerning specification (c), testimony for defendant is that he treated the cut eyelid ten days without knowing, or attempting to ascertain except as above indicated, whether the eye itself was injured. Evidence for plaintiff is that such treatment continued 17 days at defendant's direction. Defendant administered no treatment to the injured eyeball at any time. The ointment he prescribed was to facilitate healing of the eyelid. According to Mrs. Wheatley defendant assured her on the first visit to him the eye was not hurt. It is apparent treatment of the lid was inadequate treatment of the injured eye itself. It was of vital importance the injury to the eye be discovered promptly, within two or three days at the most, and effectively treated.

Further, there is substantial evidence defendant should not have attempted to treat the eyelid as he did without first examining the eyeball for injury and that what he did might have worsened the injury to the eye. Doctor Howe testified an osteopath in communities like Coggon would not sew up a cut in the eyelid of a small child when he did not know whether there was damage to the eye itself but would send the case directly to a specialist. Doctor Braley said that as compared to the eye injury the lid injury was of no significance and it could have been repaired very nicely after the eye injury was repaired; "if we have an injury to the eye we never touch the outside structure until we have fixed the eyeball; * * * In an injury of this kind surgery was certainly required promptly."

There is substantial evidence defendant was negligent in the respect alleged in specification (c).

Precedents which on principle support the conclusion reached in this division include Wilson v. Corbin, supra, 241 Iowa 593, 41 N.W.2d 702; Bartholomew v. Butts, 232 Iowa 776, 5 N.W.2d 7; Ramberg v. Morgan, 209 Iowa 474, 218 N.W. 492; Cook v. Moats, supra, 121 Neb. 769, 238 N.W. 529, 78 A. L. R. 694.

 The fact defendant is an osteopath, not an allopath, furnishes no basis for withdrawal of specifications (a) and (c). It is true, as previously indicated, he was required to observe the standards or methods of practice of osteopaths under like circumstances, rather than those observed by practitioners of other schools. Bryant v. Biggs, 331 Mich. 64, 49 N.W.2d 63, 67–69, and citations; Grainger v. Still, supra, 187 Mo. 197, 85 S.W. 1114, 1119–23, 70 L. R. A. 49; Williams v. Marini, supra, 105 Vt. 11, 162 A. 796, 797. See also Christensen v. Des Moines Still College, 248 Iowa 810, 816–818, 82 N.W.2d 741, 746. There is substantial evidence defendant failed to observe the standards of his own school in the respects we hold should have been submitted to the jury.

Section 150.6(4), Codes 1954, 1958, provides that colleges of osteopathy shall require study of the "Practice of osteopathy as applied to the diagnosis and treatment of human diseases, including * * * eye * * *." Doctor Howe testified osteopaths take

the same course as the medical man does, including study of the eye. And defendant said he was trained to take care of lacerations of the eyeball.

It is perhaps true defendant was not himself qualified to perform surgery on the cut eye. Most general practitioners of any school of medicine probably lack such qualifications. But this does not excuse what the jury could find was defendant's negligence in failure to discover the cut in the eye and in administering treatment he knew or should have known was inadequate and improper until it was too late to save vision in the injured eye or the eye itself.

III. There is substantial evidence that defendant's negligence in these respects was the proximate cause of the loss of plaintiff's eye. Both Doctor Braley and Dr. F. C. Blodi of the State University of Iowa testified they examined the eye and there was reasonable probability of saving it by prompt treatment. Doctor Blodi said it is probable you can save an eye with an injury more grave than this one. Doctor Braley testified such an injury was not particularly dangerous to vision and he felt vision would have been saved by immediate treatment. See on the issue of proximate cause Bartholomew v. Butts, supra, 232 Iowa 776, 783–785, 5 N.W.2d 7, 11, 12; Wilson v. Corbin, supra, 241 Iowa 593, 602–604, 41 N.W.2d 702, 707, 708; Daiker v. Martin, supra, 250 Iowa 75, 84, 91 N.W.2d 747, 752.

IV. Plaintiff assigns error in the withdrawal from jury consideration of claimed damages for loss of vision and future pain and suffering. In view of the verdict for defendant this alleged error must be deemed without prejudice. Olson v. Truax, 250 Iowa 1040, 97 N.W.2d 900, 902–904, and citations.

V. Error is assigned in permitting defendant to cross-examine plaintiff's father at length regarding a claim he filed with his insurance company, in admitting in evidence a "Loss Notice" to the company and testimony of a company claims manager concerning the claim and a talk he had with the father.

On direct examination Mr. Wheatley testified that on the night of November 15 he first learned from his wife Brenda's

eye was hurt and she was taken to defendant's office; on December 1 he went to see defendant with his wife and child and asked him how soon they could see a specialist. He then told of his efforts to get an early appointment with Doctor Foster and of taking Brenda to him and to the hospital. He gave no testimony as to how the accident occurred—he was away picking corn at the time.

Over plaintiff's objections as irrelevant, immaterial and not proper cross-examination defendant's counsel examined Wheatley at length regarding a claim filed with his insurance company, signed by him and his wife, in which, according to counsel, it was stated Brenda injured her eye by a sliver of glass while riding in an auto driven by him. He was asked if he did not claim damages for injury to the auto as well as for the injured eye and if he did not collect from the insurer on the claim.

One ground of plaintiff's objection to at least four questions to Mr. Wheatley regarding contents of the claim is that the best evidence was not called for. This ground was clearly good and should have been sustained. When the claim or "Loss Notice", to which defendant evidently had access, was later received in evidence it did not contain these prejudicial statements included in the cross-examiner's questions.

The Loss Notice was admitted over plaintiff's objection no proper foundation was laid for its admission, it was not binding on plaintiff and was not proper impeaching evidence because it related to collateral matters. The exhibit, written by an agent of the insurer, gave two versions of the cause of Brenda's injury. It stated that on November 22, 1954, Mrs. Wheatley was driving a pickup when Brenda fell off the seat on the emergency handle, hitting her eye. The notice also recited that on Monday, November 15, 1954, Brenda was playing around the pickup while parked in the yard, fell off the seat onto some broken glass and cut her eye.

Over like objection testimony of Mr. John Lilledahl, a claims manager of the insurer, was also received as to a conversation he had with Mr. Wheatley in July 1957 concerning the claim.

It was error to permit the cross-examination of Wheatley concerning the insurance claim and to admit the Loss Notice and testimony of Lilledahl as to his talk with Wheatley.

The cross-examination was improper because not germane to the direct examination nor to any material issue in the case. McNeely v. Conlon, 216 Iowa 796, 798, 248 N.W. 17; Hayungs v. Falk, 238 Iowa 285, 293, 294, 27 N.W.2d 15, 19; 58 Am. Jur., Witnesses, sections 623, 629; 98 C. J. S., Witnesses, section 378b, pages 137, 138; Annotation, 7 A. L. R. 1116.

Nor was the cross-examination proper as laying the foundation for impeachment of the witness. Nothing in the insurance claim or Loss Notice was inconsistent with any testimony of his except that brought out on cross-examination concerning collateral matters not relevant to the material issues. A witness may not be cross-examined on a subject not referred to in his direct examination and not pertinent to the material issues for the mere purpose of later contradicting him. State v. Tolson, 248 Iowa 733, 740, 82 N.W.2d 105, 109, and citations; Quillen v. Lessenger, 190 Iowa 939, 943, 944, 181 N.W. 8; Massena Savings Bank v. Garside, 151 Iowa 168, 174, 175, 130 N.W. 918; Swanson v. French, 92 Iowa 695, 697–699, 61 N.W. 407; Commonwealth v. Truitt, 369 Pa. 72, 85 A.2d 425, 30 A. L. R.2d 572, 578; 98 C. J. S., Witnesses, section 484b(3), pages 372, 373, section 633a, page 652 ("nor is it permissible to impeach the credibility of witnesses by injecting irrelevant and immaterial issues and then contradicting them thereon."); 58 Am. Jur., Witnesses, sections 623, 783, 784 ("But it is firmly established that the answer of a witness on cross-examination as to a merely collateral matter * * * may not be contradicted." Page 433).

These authorities also support our conclusion it was error to admit the Loss Notice and testimony of Lilledahl concerning his conversation with Wheatley. Lilledahl's testimony was inadmissible too, even if it were a proper subject of impeachment, because no foundation was laid for it by calling Wheatley's attention to the claimed conversation. Law v. Hemmingsen, 249 Iowa 820, 834, 835, 89 N.W.2d 386, 396, and citations.

The jury should have been permitted to decide the material

issues in plaintiff's case without having its attention diverted at length to the collateral and immaterial question whether her father had attempted to defraud his insurance company by misrepresenting the cause of the injury defendant undertook to diagnose and treat. That admission of this improper evidence was prejudicial to plaintiff is clear. Indeed defendant's argument refers to "the devastating effect" of his impeaching evidence as to this insurance claim.

VI. Plaintiff's cross-examination of defendant was unduly restricted. On direct examination defendant clearly inferred he suspected from the start plaintiff's eyeball was injured. His testimony he advised Mrs. Wheatley on November 15 to have specialists examine the eye under a general anaesthetic is one indication of this. There are others. The court refused to permit cross-examination upon this subject, with the remark he did not see its materiality. Plaintiff's counsel asked to be heard upon the matter but was directed to proceed with the cross-examination.

Questions to which defendant's objections were sustained as immaterial include, "All the time you were doing the things you said you have done did you suspect there was a puncture of the eyeball?" "Did you give any consideration to the question whether the eyeball was injured when Brenda was brought into your office?" "You told them from the start to go to Dr. Foster because you suspected there might be some injury to the eye, is that it?" All this line of questions was held to be immaterial.

Of course the trial court has considerable discretion in determining the scope and extent of cross-examination, and a rather wide latitude is usually permitted. Colburn v. Krabill, 232 Iowa 290, 293, 3 N.W.2d 154, 156, and citations; State v. Sedig, 235 Iowa 609, 615, 616, 16 N.W.2d 247, 251 and citations; State v. Sampson, 248 Iowa 458, 461, 462, 79 N.W.2d 210, 212, 213, and citations.

We have also held pertinent cross-examination is a valuable right essential to a fair trial and to be jealously guarded. Also that where the direct examination creates an inference as to the existence of a fact not directly testified to, the witness may be cross-examined to rebut such inference. Eno v.

Adair County Mut. Ins. Assn., 229 Iowa 249, 257–259, 294 N.W. 323, and citations; Pickerell v. Griffith, 238 Iowa 1151, 1163, 1164, 29 N.W.2d 588, 595, and citations; Dioptron Co. v. Dimmitt, 245 Iowa 450, 455, 456, 62 N.W.2d 749, 751, 752. To like effect are 98 C. J. S., Witnesses, section 368b, page 118, section 399a, page 179; 58 Am. Jur., Witnesses, section 634.

The excluded cross-examination was germane to the direct examination and to allegations referred to in Division II hereof that defendant negligently failed to diagnose plaintiff's condition and administered treatment he knew or should have known was inadequate and improper.

VII. The court refused to instruct the jury, as plaintiff requested, that the negligence of one or both of her parents cannot be imputed to her and their failure to promptly consult Doctors Foster and Noe would not prevent recovery if defendant was negligent as alleged in specification (a) or (c) and such negligence was a proximate cause of plaintiff's injuries. Due exception was taken to the refusal. No such instruction was given. The jury should have been so instructed. (We have held in Division II hereof specifications (a) and (c) should have been submitted.)

Since plaintiff was only two of course she could not be contributorily negligent. It is well settled in Iowa and generally elsewhere that a parent's negligence cannot be imputed to the child in its action against a third person to recover for negligent injury to the child. Primus v. Bellevue Apartments, 241 Iowa 1055, 1064, 44 N.W.2d 347, 353, 25 A. L. R.2d 565, 575, and citations; Ives v. Welden, 114 Iowa 476, 478, 87 N.W. 408, 54 L. R. A. 854, 89 Am. St. Rep. 379, and citations; Lange v. Hoyt, 114 Conn. 590, 596, 159 A. 575, 577, 82 A. L. R. 486, 490 ("* * * even if there had been neglect of proper surgical treatment by her mother, the negligence of the parent would not be imputable to the child [citations].") ; Louisville & N. R. Co. v. Wilkins, 143 Ky. 572, 136 S.W. 1023, Ann. Cas. 1912D 518, 520; Peterson v. Richfield Plaza, 252 Minn. 215, 89 N.W.2d 712, 718; 65 C. J. S., Negligence, section 160a; 38 Am. Jur., Negligence, section 240.

 Upon the trial defendant contended Brenda's parents were negligent in failing to promptly take her to Doctors Foster and Noe. Defendant argues here the parents were negligent in taking her to him at all. Of course if the parents' negligence were the sole proximate cause of the injury for which recovery is sought it would be a good defense. But if defendant's negligence in one or more of the respects charged and supported by evidence was a substantial factor in causing such injury, negligence of either parent would not be a defense. Upon a retrial the jury should be plainly so instructed. Law v. Hemmingsen, supra, 249 Iowa 820, 824–826, 89 N.W.2d 386, 390, 391, and citations. See also authorities last above; Paulsen v. Haker, 250 Iowa 532, 536, 95 N.W.2d 47, 50; Frederick v. Goff, 251 Iowa 290, 298, 100 N.W.2d 624, 629; Lockwood v. Wiltgen, 251 Iowa 484, 101 N.W.2d 724.

 VIII. The court also refused to instruct the jury, as requested, that Brenda's father who brought the action as next friend was not a party in interest but was an aid to her to assert her rights, if any, against defendant. Such an instruction should have been given. Rule 12, Rules of Civil Procedure; In re Estate of Beghtel, 236 Iowa 953, 957, 20 N.W.2d 421, 423, 161 A. L. R. 1384, 1387, 1388, and citations; Albee v. Winterink, 55 Iowa 184, 7 N.W. 497. See also Webb v. Harris, 32 Okla. 491, 121 P. 1082, Ann. Cas. 1914A 602, 604; Bertinelli v. Galoni, 331 Pa. 73, 200 A. 58, 118 A. L. R. 398, 400; 27 Am. Jur., Infants, section 118. Defendant's answer admits the next friend brought the action for Brenda's benefit.

IX. Instruction No. 3 states the action is based upon the alleged negligence of defendant and defines negligence as omitting to do something a person of ordinary care would do, or doing something such a person would not do, under the circumstances. Instruction No. 6 states an osteopath is bound to use that degree of knowledge, skill, care and attention ordinarily exercised by an osteopath under like circumstances and in like localities. Number 6 substantially conforms to the rule adopted in Whitesell v. Hill, 101 Iowa 629, 636, 637, 70 N.W. 750, 37 L. R. A. 830, and followed in many later decisions. See Note 36

Iowa Law Review 681; Daiker v. Martin, supra, 250 Iowa 75, 80, 81, 91 N.W.2d 747, 750.

 Plaintiff objected to Instruction No. 3 in that it holds defendant only to the care of the ordinary *person* rather than that ordinarily exercised by *an osteopath* under like circumstances, as required by Instruction No. 6. It is argued these two instructions are confusing and the jury would not know which to follow; that although No. 6 is correct, No. 3 is incorrect. Giving an incorrect instruction is not obviated by giving a correct one on the same issue since it is impossible to tell whether the jury followed the correct guide or the incorrect one. Clarke v. Hubbell, 249 Iowa 306, 314, 315, 86 N.W.2d 905, 910, and citations; Plumb v. Minneapolis & St. L. Ry. Co., 249 Iowa 1187, 1193, 91 N.W.2d 380, 384, 385.

 It is axiomatic that instructions are to be taken together and read as a whole. Precedents last above; Perry v. Eblen, 250 Iowa 1338, 1348, 98 N.W.2d 832, 838. In view of this rule, although Instruction No. 3 might have been omitted, we are not persuaded it was erroneous in the respect complained of. A definition of negligence generally such as that in No. 3 may have helped the jury understand the particular standard of care required of defendant in such an action as this, as stated in No. 6.

We have not referred to some of the arguments in the briefs but they have all been considered.—Reversed and remanded.

All JUSTICES concur except OLIVER, J., not sitting.