DOWDELL v CRITTENTON HOSPITAL

1. NEGLIGENCE—MALPRACTICE—EVIDENCE.

   In a medical malpractice action for damages brought by a parent on behalf of a child, presentation by the defendant of evidence that the cause of the child's illness or damages was the action, inaction or other negligence of the parent is proper.

2. EVIDENCE—HEARSAY—ADMISSION OF HEARSAY—SUBSTANTIAL INJUSTICE—COURT RULES.

   Admission into evidence of a letter written by a witness who was under cross-examination at the time the letter was introduced was not reversible error, even though the letter was in fact hearsay, where viewing the conduct of the trial as a whole the Court of Appeals cannot say that the admission of the letter standing by itself constituted such substantial injustice that a new trial is mandated (GCR 1963, 529.1).

3. EVIDENCE—HEARSAY—WRITINGS—PRESENCE OF WRITER.

   The proposition that a writing which is clearly hearsay is inadmissible even when the writer is present in court is not a logical proposition where the writer is available for cross-examination.

Appeal from Wayne, Charles S. Farmer, J. Submitted March 2, 1977, at Detroit. (Docket No. 25764.) Decided May 2, 1977. Leave to appeal applied for.

Complaint by Elbert Dowdell, by his next friend Elaine Dowdell, and by Elaine Dowdell against Crittenton Hospital and Dr. Rosario Itchon, M.D., for damages for medical malpractice. The claim of Elaine Dowdell was dismissed by stipulation dur-

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur 2d, Negligence §§ 396, 397.
[2] 29 Am Jur 2d, Evidence §§ 878, 881.
[3] 29 Am Jur 2d, Evidence § 498.

ing trial. Judgment for defendants. Plaintiff appeals. Affirmed.

*Barbara, Ruby, Domol, Bowerman, Miller & Aaron, P. C.* (by *Peter R. Barbara* and *Frank G. Becker)*, for plaintiff.

*Harvey, Kruse & Westen, P. C.* (by *James N. Martin)*, for defendants.

Before: D. E. HOLBROOK, P. J., and BASHARA and W. F. HOOD,* JJ.

BASHARA, J. Plaintiff, by his guardian, appeals from a jury verdict of no cause of action in a medical malpractice case.

The record reveals that plaintiff was born at defendant hospital on June 1, 1970. Two days after birth a complete examination indicated that the plaintiff was jaundiced. This is apparently not an unusual condition at birth, occurring in 50 to 60 percent of all newborns. The incidence of jaundice during the first week of birth is termed "idiopathic hyperbilirubinemia."

The jaundice condition from this disease ordinarily decreases substantially by the seventh day after birth. However, a significant increase in the jaundice condition after the seventh day indicates the possibility of septicemia. Septicemia is a disease wherein active infection, through discharge of infectious materials, affects the body's systems. A diagnosis of septicemia requires immediate and vigorous treatment with antibiotics. It is undisputed that failure to abate the progressive infection with antibiotics may cause serious and permanent injury or death.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Following the initial diagnosis of jaundice on June 3, 1970, laboratory tests showed a bilirubin count of 9.77 milligrams. Jaundice is produced by an increase in the level of bilirubin.

It is conceded that when the child was discharged from the defendant hospital on June 4, the bilirubin count was at 5.0 milligrams, considered to be well within the normal range and not dangerous. On June 17, 1970, it is undisputed that the child was taken to Crittenton Hospital with severe septicemia and a bilirubin count of 41.8 milligrams. The child was immediately sent to Children's Hospital where he was treated with blood exchange transfusions and antibiotics. It is alleged that permanent injury resulted.

The main dispute centered around the claimed failure to diagnose septicemia between the baby's initial discharge on June 4, 1970, and his readmission on June 17, 1970.

The mother testified that she called the defendant hospital's baby clinic on June 8, and received advice to change the child's formula. She claimed that the clinic was called the next day when the baby got no better, and defendant Dr. Itchon came to the phone. It was the mother, Elaine Dowdell's, testimony that the doctor advised another change in diet.

Elaine Dowdell alleged that she took the baby to the clinic on June 10, 1970. Dr. Itchon did not examine the baby but told her not to be worried and recommended resumption of a prior formula. Elaine Dowdell did not return to the clinic, nor apparently did she call, until June 17, 1970.

Defendant's position and testimony was that the child was not brought to the hospital between June 4, 1970, and June 17, 1970. Dr. Itchon further testified that the child's mother called her

only once during that period, when the child was four or five days old saying the child was jaundiced. The doctor told her that jaundice was not abnormal at such an early age, but if he got worse to come to the hospital or go directly to Children's Hospital.

Plaintiff's complaint initially included a count for Elaine Dowdell individually. The complaint also alleged that the defendant hospital's negligent care between birth and discharge on June 4, 1970, resulted in the infant's contracting septicemia.

Defendant's answer contained an affirmative defense that plaintiff's mother was contributorily negligent in failing to properly return the child to the hospital after being so instructed by the defendant doctor or hospital personnel.

Plaintiff first contends that the trial court erred in allowing evidence of the possible negligence of the baby's mother in a malpractice action. The record reveals the mother was originally a named plaintiff and that the complaint alleged negligence of the defendant hospital prior to the initial discharge on June 4. Plaintiff's attorney alluded to the mother's claim and negligence prior to discharge in his opening statement.

Prior to commencement of trial, plaintiff made a motion *in limine* to exclude any reference to alleged negligence by the infant's mother in her care of the child. The court ruled that although contributory negligence could not be a bar to the child's claim, defendant could attempt to show that the cause of the infant's illness was the mother's negligence in failing to follow instructions or do something for the child.

During the course of the trial the plaintiff stipulated to dismiss the mother's derivative complaint and the claim of negligence prior to discharge.

No Michigan cases appear to resolve the issue of whether evidence of causative negligence of a parent may be admissible in a malpractice action for a child. However, at least three other jurisdictions have so ruled.

In *Cyr v Landry,* 114 Me 188; 95 A 883 (1915), the Court denied recovery against the treating doctor, concluding it was the mother's own negligence in handling her child's surgical dressing which in fact caused the child's damages. In *Brown v Dark,* 196 Ark 724; 119 SW2d 529 (1938), recovery was defeated because the plaintiff's father failed to follow instructions and leave his six-year-old son at the hospital when infection developed after having the child's arm casted. In *Wheatley v Heideman,* 251 Iowa 695, 712; 102 NW2d 343, 353–354 (1960), the defendant osteopath, who failed to correctly diagnose infection of the eye, alleged that the parents of the two-year-old plaintiff were negligent in taking the child to him at all for treatment of a condition they knew was beyond his limitations, and were negligent in failing to take the child to specialists promptly. The Court held that "if the parents' negligence were the sole proximate cause of the injury * * * it would be a good defense. But if defendant's negligence * * * was a substantial factor in causing such injury, negligence of either parent would not be a defense". A similar instruction was given by the court in this case.

These cases are not very current, yet they—as well as logic itself—indicate that where the cause of an illness or the cause of extensive damages is alleged to be the action, inaction or other negligence of a parent, evidence of such is proper for presentation by the defendant.

It should be remembered that the mother ini-

tially filed a claim in her own behalf. As such it was not improper to present evidence of her negligence as a bar to her claim. Even after her claim was dismissed the issue was still relevant to the question of whether the septicemia was not diagnosed or whether the mother's failure to bring the child to the hospital prevented the diagnosis from being made.

Plaintiff also alleges that the trial court improperly admitted into evidence correspondence from a doctor who was then on the witness stand, because the letter was inadmissible as hearsay. While the doctor was testifying on cross-examination, defense counsel introduced into evidence a letter from the doctor to defense counsel's firm evaluating the case.

It seems clear that the letter was in fact inadmissible hearsay. It is an out-of-court statement offered to prove the truth of the matters asserted therein. McCormick, Evidence (2d ed), § 246, p 584. The presence of the author of the statement at trial has been traditionally considered irrelevant. McCormick, *supra,* § 251, p 601.

However, it is our opinion that the admission of the letter into evidence did not constitute reversible error. GCR 1963, 529.1 states:

"No error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict * * * unless refusal to take such action appears to the court inconsistent with substantial justice."

Viewing the conduct of the trial as a whole we cannot say that admission of the letter standing by itself constitutes such substantial injustice that a new trial is mandated. We note McCormick's indication that the proposition, of such a writing being

inadmissible even when the writer is present, is under attack. We would agree that such a proposition is not logical when the author is available for cross-examination.

Plaintiff alleges that he was denied a fair trial. Defendant responds to the contrary. Both counsel agree that this was a hotly contested trial. It lasted two weeks, presented volumes of testimony, with countless objections and endless argument on legal rulings. In viewing the record as a whole, we can only conclude that both sides received a fair trial. The remaining issues do not merit further discussion.

Affirmed. Costs to defendants.